UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-1

_____

Dale E. Barney, Esq.
David N. Crapo, Esq.
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail: dbarney@gibbonslaw.com
      dcrapo@gibbonslaw.com
Counsel for Discover Growth Fund, LLC

| | |
|---|---|
| In re: | **Chapter 7** |
| | **Case No. 19-13273 (VFP)** |
| IMMUNE PHARMACEUTICALS, INC., *et al.*,[1] | **(Jointly Administered)** |
| Debtors. | |

| | |
|---|---|
| IMMUNE PHARMACEUTICALS, INC.; IMMUNE PHARMACEUTICALS, LTD.; CYTOVIA, INC.; IMMUNE ONCOLOGY PHARMACEUTICALS, INC.; MAXIM PHARMACEUTICALS, INC.; IMMUNE PHARMACEUTICALS USA CORP.; and THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF IMMUNE PHARMACEUTICALS, INC., *et al.*, | **Adv. Proc. No. 19-02033** |
|         Plaintiffs, | **DEFENDANT DISCOVER GROWTH FUND, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO JEFFREY A. LESTER, CHAPTER 7 TRUSTEE'S MOTION FOR RECONSIDERATION OF ORDER DENYING PARTIAL SUMMARY JUDGMENT UNDER 11 U.S.C. § 510(b)** |
|   vs. | |
| DISCOVER GROWTH FUND, LLC, | |
|         Defendant. | |

---

[1] The Debtors in these chapter 7 cases and the last four digits their of each Debtor's taxpayer identification number are as follows: Immune Pharmaceutical, Inc. (1431); Immune Pharmaceuticals, Ltd.; Cytovia, Inc. (7805); Immune Oncology Pharmaceuticals, Inc.; Maxim Pharmaceuticals, Inc. (9983); and Immune Pharmaceuticals USA Corp. (9630).

---

DEFENDANT'S OPPOSITION TO MOTION FOR RECONSIDERATION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION. ............................................................................... 1

II.     STATEMENT OF FACTS. ................................................................. 3

III.    THE TRUSTEE IS NOT ENTITLED TO RECONSIDERATION. ..................... 3

        A.      Trustee's Motion Must Be Denied  Because it Fails to Meet any of
                the Three Limited Circumstances Under Which Reconsideration is
                Appropriate. .............................................................................................. 3

        B.      The Trustee's Motion Mischaracterizes the Section 510(b)
                Authorities and the Reves Doctrine Just as the Plaintiffs did in the
                SJ Motion, and the Court Should Reject that Approach Again. ................. 8

                1.      Notwithstanding 11 U.S.C. § 101(49)(A)(v), the Debenture
                        is Not a Security for Purposes of 11 U.S.C. §510(b). ..................... 8

                2.      As Explicated in Discover's Opposition to the SJ Motion,
                        Securities Laws Demonstrate That the Debenture is Debt,
                        not Equity. ...................................................................................... 10

                3.      The Definitions in the Agreement are Irrelevant to the
                        Determination of the Debenture as Debt. ....................................... 14

                4.      The Fact that the Debenture has not Converted is Critical,
                        as the Court Correctly Perceived. ................................................... 15

        C.      The Trustee Falsely Claims that Discover's Claim is for Damages
                "Arising From the Purchase or Sale" of a Security Under the
                Agreement. ............................................................................................... 19

        D.      Significant Material Factual Disputes Exist ............................................ 21

CONCLUSION. ............................................................................................................. 23

DEFENDANT'S OPPOSITION TO MOTION FOR RECONSIDERATION

2832050.3 115785-100485

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re American Wagering, Inc.*,
   493 F.3d 1067 ...............................................................................................................18

*Banco Espanol de Credito v. Security Pac. Nat'l Bank*,
   973 F.2d 51 (2d Cir. 1992)..........................................................................................11

*Benedict v. Amaducci*,
   1995 U.S. Dist. LEXIS 9681, 1995 WL 413206 (S.D.N.Y. 1995)..........................13

*In re Betacom of Phoenix, Inc.*,
   240 F.3d (9th Cir. 2001) .......................................................................................17, 18

*In re Bressman*,
   874 F.3d 142 (3d Cir. 2017)...........................................................................................6

*Carmichael v. Everson*,
   2004 U.S. Dist. LEXIS 11742 (D.N.J. May 21, 2004) ............................................4

*In re CPW Acquisition Corp.*,
   2009 Bankr. LEXIS 3607 (Bankr. S.D.N.Y. Nov. 16, 2009) ..................................11

*In re Enron Corp., et al.*,
   341 B.R. 141 (Bankr. S.D.N.Y. 2006)...........................................................................8

*Equitable Life Assurance Society of the United States v. Arthur Andersen & Co.*,
   655 F. Supp. 1225 (S.D..N.Y. 1987)...........................................................................12

*Faysound Ltd. v. United Coconut Chemicals, Inc.*,
   878 F.2d 290 (9th Cir. 1989) .........................................................................................4

*In re Gabapentin Patent Litig.*,
   432 F. Supp. 2d 461 (D.N.J. 2006) ...............................................................................5

*Harad v. Aetna Cas. & Sur. Co.*,
   839 F.2d 979 (3d Cir. 1988)...........................................................................................6

*Holten v. Chevron U.S.A.*,
   2002 U.S. Dist. LEXIS 10151 (D.N.J. May 22, 2002) ...............................................5

*Intelligent Dig. Sys., LLC v. Visial Mgmt. Sys.*,
   683 F. Supp. 2d 278 (E.D.N.Y. 2010) ..............................................................10, 11, 12, 13

*Interfaith Comty. Org. v. PPG*,
    702 F. Supp. 2d 295 (D.N.J. 2010) ........................................................................5

*Krishanthi v. Rajaratnam*,
    2011 U.S. Dist. LEXIS 53470 (D.N.J. May 18, 2011) ........................................4, 5

*In re Linn Energy*,
    936 F.3d 334 (5th Cir. 2019) .................................................................................18

*In re Mobil Tool Int'l, Inc.*,
    306 B.R. 778 (Bankr. D. Del. 2004) ....................................................................7, 9

*N. River Ins. Co. v. CIGNA Reinsurance Co.*,
    52 F.3d 1194 (3d Cir. 1995)....................................................................................4

*N.V.E. v. Palmeroni*,
    2012 U.S. Dist. LEXIS 78215 (D.N.J. June 5, 2012) .............................................5

*In re NAL Financial Group, Inc.*,
    237 B.R. 225 (Bankr. S.D. Fla. 1999)................................................................9, 16

*NL Indus. v. Commercial Union Ins. Co.*,
    935 F. Supp. 513 (D.N.J. 1996) ..............................................................................4

*Oritani S&L Ass'n v. Fidelity & Deposit*,
    744 F. Supp. 1311 (D.N.J. 1990) ............................................................................5

*Resorts Intern. v. Greate Bay Hotel and Casino*,
    830 F. Supp. 826 (D.N.J. 1992) ..............................................................................4

*Reves, et al. v. Ernst & Young*,
    494 U.S. 56 (1990)..........................................................................................10, 11

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997).................................................................................................8

*Robyn Meredith, Inc. v. Levy*,
    440 F. Supp. 2d 378 (D.N.J. 2006) .......................................................................10

*Russell v. Levi*,
    2006 U.S. Dist. LEXIS 60582 (D.N.J. Aug. 15, 2006)...........................................5

*S.E.C. v. W.J. Howey Co.*,
    328 U.S. 293, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946)..........................................10

*S.P. Richards Co. v. Aurora*,
    2019 WL 4127147 (Bankr. D. N.J. Aug 29, 2019).............................................3, 6

DEFENDANT'S OPPOSITION TO MOTION FOR RECONSIDERATION

*Sagaral v. Mountainside Hosp.*,
   2001 U.S. Dist. LEXIS 6872 (D.N.J. Mar. 28, 2001) ................................................. 4

*Stepney v. Gilliard*,
   2006 U.S. Dist. LEXIS 59094 (D.N.J. Aug. 21, 2006) ............................................... 4

*Sunshine Shopping Ctr., Inc. v. Kmart Corp.*,
   85 F. Supp. 2d 537 (D.V..I. 2000) ......................................................................... 14

*In re Telegroup, Inc.*,
   281 F.3d 133 (3d Cir. 2002) ...................................................................... *passim*

*In re Tristar Esperanza Properties*,
   LLC, 782 F.3d 492 (9th Cir. 2015) ...................................................................... 18

*Zitter v. Petrucelli*,
   No. 15-6488, 2017 WL 1837850 (D.N.J. May 8, 2017) ........................................... 3

**Statutes**

11 U.S.C. § 101(49)(A)(v) ......................................................................................... 8

11 U.S.C. § 510(b) .......................................................................................... *passim*

11 U.S.C. § 510(c) ................................................................................................... 1

**Rules**

Fed. R. Bankr. P. 9023 ............................................................................................. 3

Fed. R. Civ. P. 59(e) ................................................................................................. 3

Federal Bankruptcy Rule 9024 ................................................................................. 3

Local Civil Rule 7-18 ............................................................................................... 4

Local Civil Rule 7.1[i] .............................................................................................. 5

Rule 59 ..................................................................................................................... 3

DEFENDANT'S OPPOSITION TO MOTION FOR RECONSIDERATION

## I.      INTRODUCTION.

On May 4, 2020, Jeffrey A. Lester, Chapter 7 Trustee (the "Trustee") for Immune Pharmaceuticals, Inc., *et al.* (the "Debtors") filed a motion (the "Motion") asking this Court for reconsideration pursuant to F.R.B.P. 9023 of the Court's April 20, 2020 Order, Docket No. 37 (the "Order"), which denied the January 29, 2020 second motion for partial summary judgment (the "SJ Motion"), filed by the Debtors and the Official Committee of Unsecured Creditors of the Debtor (the "Committee", and, together with the Debtors, "Plaintiffs"), under 11 U.S.C. § 510(b) against defendant Discover Growth Fund, LLC ("Discover").   The SJ Motion sought to subordinate Discover's proof of claim number 37-1, as amended (the "Claim") to the same priority as that of claims of holders of common stock pursuant to 11 U.S.C. § 510(b) and to transfer to the estate any lien securing Discover's Claim pursuant to 11 U.S.C. § 510(c).

The Motion is nothing but a bald rehashing of the specious arguments urged by the Debtors and the Committee and rejected by the Court at the hearing on the SJ Motion.   These arguments, which are particularly meritless where urged under a summary judgment standard, were nevertheless championed by Committee counsel while the Court was in the process of both denying the SJ motion and converting the captioned bankruptcy cases ("Bankruptcy Cases") to chapter 7.   That conversion led to the Trustee's appointment.

The Trustee's Motion brings nothing new to the table, despite its efforts to dress up the Committee's histrionic presentation during the SJ Motion's hearings in more measured tones. Nevertheless, as did the Plaintiffs on the SJ Motion, the Trustee seeks to foist form over function, ignores the evidence in the record in favor of a rote recitation of statutory provisions, and engages in the same mischaracterization of the 11 U.S.C. § 510(b) cases urged by the Plaintiffs during the

April 1, 2020 hearing on the SJ Motion (the "Hearing"). The Trustee's Motion should be denied for several reasons.

First, the Trustee has failed to demonstrate grounds for reconsideration. The law in the Third Circuit is well established. Where, as here, a motion for reconsideration merely expresses disagreement with the Court's decision or re-argues matters already raised and rejected, the motion must be denied. The Trustee does not argue that the Court overlooked "controlling decisions," or that there was an intervening change in law or fact, or that new evidence has been discovered. As to the Trustee's argument that this Court committed clear error of law in denying the SJ Motion in the face of the myriad material factual disputes identified by the Court during the Hearing, that argument is meritless.

Second, even assuming reconsideration itself were proper, which it is not, the Trustee simply rehashes arguments that this Court already rejected during the Hearing, at which the Court denied the SJ Motion.

Finally, during the Hearing, the transcript of which is attached to the Declaration of Dale E. Barney, etc. dated May 26, 2020 and filed herewith ("Apr. 1 Tr."), this Court correctly recognized that there are numerous factual disputes that require a plenary hearing for determination. The Motion simply urges this Court to ignore those disputes and adopt a mechanized reading of the statutes in a vacuum, an approach that this Court rejected mere weeks ago. The Motion, like the SJ Motion, fails to meet the extraordinary standards for summary judgment, and, like the SJ Motion, should be denied.[2]

---

[2] In support of its opposition to the Motion, Discover shall rely upon, and defined terms used herein shall have the meaning ascribed in, the Declaration of John C. Kirkland, etc. dated February 12, 2020 and filed in opposition to Plaintiffs' first summary judgment motion in the Adversary Proceeding [Doc 9-3] ("Kirkland Dec. I") and/or the Declaration of John C. Kirkland, etc., dated March 17, 2020 and filed in opposition to Plaintiffs' second summary judgment motion in the Adversary Proceeding [Doc 22-2] ("Kirkland Dec. II"). The Kirkland Dec. I and the Kirkland

2

## II.    STATEMENT OF FACTS.

For its statement of facts on the Motion, Discover respectfully refers the Court to Discover's Counter/Supplemental Statement of Material Facts set forth on pp. 2-17 of its Memorandum of Law in Support of Opposition of Discover Growth Fund, LLC to Plaintiffs' Second Motion for Partial Summary Judgment Against Defendant Discover Growth Fund, LLC dated March 17, 2020 and filed in the Adversary Proceeding in opposition to the SJ Motion as Doc 22.  The facts set forth therein are hereby incorporated by reference.

## III.   THE TRUSTEE IS NOT ENTITLED TO RECONSIDERATION.

### A.    Trustee's Motion Must Be Denied  Because it Fails to Meet any of the Three Limited Circumstances Under Which Reconsideration is Appropriate.

As a matter of law, reconsideration here is impermissible.  The Trustee relies upon Fed. R. Civ. P. 59(e) and Fed. R. Bankr. P. 9023, but fails to recognize that the first case he cites, *S.P. Richards Co. v. Aurora*, 2019 WL 4127147, at *2 (Bankr. D. N.J. Aug 29, 2019), states expressly that "Rule 59 encompasses a Motion for a New Trial or to Alter or Amend a Judgment and 'the rule only applies to final judgments, not interlocutory orders.'"  *Id., quoting Zitter v. Petrucelli*, No. 15-6488, 2017 WL 1837850, at *2 (D.N.J. May 8, 2017).  Instead, the Court in *S.P. Richards Co.* determined that the movant's motion for reconsideration of an *order vacating a default judgment* – a far cry from an order denying a failed summary judgment motion – "can be rooted in either the Court's inherent powers [to reconsider its orders at any time before final judgment] or in Federal Bankruptcy Rule 9024."  Id., at *1-*2, citing In re Dots, LLC, 562 B.R. 286, 291 (Bankr. D.N.J. 2017).

---

Dec. II, as well as Discover's other pleadings filed in opposition to said summary judgment motions under Doc 9 and Doc 22, are hereby incorporated by reference.

Reconsideration may be granted in only three limited circumstances: "(1) an intervening change in controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or to prevent manifest injustice." *Carmichael v. Everson*, 2004 U.S. Dist. LEXIS 11742, at *2-3 (D.N.J. May 21, 2004); *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

"Relief by way of a motion for [reconsideration] is 'an extraordinary remedy' that is to be granted 'very sparingly.'" *Sagaral v. Mountainside Hosp.*, 2001 U.S. Dist. LEXIS 6872, at *3 (D.N.J. Mar. 28, 2001) (citing *NL Indus. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996); *Stepney v. Gilliard*, 2006 U.S. Dist. LEXIS 59094, at * 3 n.1 (D.N.J. Aug. 21, 2006); *see also Resorts Intern. v. Greate Bay Hotel and Casino*, 830 F. Supp. 826, 831 (D.N.J. 1992) ("in this district . . . a motion for reconsideration is an extremely limited procedural vehicle.").

A party may not base a motion for reconsideration upon its disagreement with the court's decision. "[A] motion for reconsideration is not an appeal. . . . [R]econsideration is inappropriate where the motion merely raises a party's disagreement with the Court's decision or seeks to rehash arguments already raised and rejected." *Krishanthi v. Rajaratnam*, 2011 U.S. Dist. LEXIS 53470, at *6-7 (D.N.J. May 18, 2011).[3]  Additionally, a "motion for reconsideration is improper when it is used 'to ask the Court to rethink what it had already thought through -- rightly or wrongly.'"

---

[3] Other districts have made the prohibition of rehashing arguments previously made and rejected on a motion for reconsideration an express provision of their local rules.  For example, in the Ninth Circuit, a motion for a court to reconsider a ruling is not an opportunity to "rehash[] what ha[s] been before the court when it ruled" on the prior motion.  *See Faysound Ltd. v. United Coconut Chemicals, Inc.*, 878 F.2d 290, 296 (9th Cir. 1989).  This is encapsulated in Central District of California Local Civil Rule 7-18, which says, in part: "No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion."  Here, the Trustee has merely rehashed the arguments of the Partial Summary Judgment Motion, citing the same misinterpretations of the same cases.

4

*Oritani S&L Ass'n v. Fidelity & Deposit*, 744 F. Supp. 1311, 1314 (D.N.J. 1990); *see, e.g., N.V.E. v. Palmeroni*, 2012 U.S. Dist. LEXIS 78215, at \*10 n.3 (D.N.J. June 5, 2012) ("Plaintiff disagrees with the Court's factual determination.  That disagreement is not appropriately resolved through a motion for reconsideration.").

Likewise, a motion for reconsideration is inappropriate if it seeks to re-litigate matters previously presented.  *See Krishanthi*, 2011 U.S. Dist. LEXIS 53470, at \*6-7; *Interfaith Comty. Org. v. PPG*, 702 F. Supp. 2d 295, 317 n.3 (D.N.J. 2010); *In re Gabapentin Patent Litig.*, 432 F. Supp. 2d 461, 463 (D.N.J. 2006) ("reconsideration does not contemplate a recapitulation of arguments considered by the court before rendering its decision.").

When a movant "rehashes the claims" already presented to the court, it follows that the party "cannot satisfy the threshold for granting a motion for reconsideration."  *Russell v. Levi*, 2006 U.S. Dist. LEXIS 60582, at \*6 (D.N.J. Aug. 15, 2006).  Therefore, "[b]efore reaching the merits of a motion for reconsideration, a court must decide whether the arguments are properly raised under Local Civil Rule 7.1[i]."  *Holten v. Chevron U.S.A.*, 2002 U.S. Dist. LEXIS 10151, at \*4 (D.N.J. May 22, 2002).

The Trustee does not satisfy any of the three prongs required for a motion for reconsideration.  First, the Trustee does not argue that there was a change to the controlling law; there is none. Second, the Trustee does not argue that previously unavailable facts have become available; there are none.  Third, the Trustee argues that the Court made a clear error of law in its finding that the $5.5 million face amount Senior Secured Redeemable Convertible Debenture (the "Debenture") is not a security for the purposes of 11 U.S.C. § 510(b).   This Court already entertained this argument at the Hearing, as it was presented in the SJ Motion, and rejected it as inappropriate and unsupportable for summary judgment purposes.  The Trustee raises nothing new

that warrants reconsideration and the grant of summary judgment.  As explained herein, the Court clearly rejected the Plaintiffs' tortured case law interpretations, mischaracterization of the Debt Documents, and disregard of Immune's and Discover's intent that Discover be Immune's senior lien creditor under the Debt Documents.  These three legal thresholds are insurmountable here, so that the Court should reject the Motion.

Recognizing that the Trustee cannot satisfy any of these three prongs, particularly on a summary judgment standard, the Motion instead asks the Court to "apply a standard of review that reflects the interlocutory nature of the order at issue," citing *S.P. Richards Co. v. Aurora*, 2019 WL 4127147, at *2 (Bankr. D. N.J. Aug 29, 2019).  In essence, the Trustee asks the Court to relax the stringent standard from the entry of summary judgment applied by the Court in denying the SJ Motion.  Nothing in *S.P. Richards Co.* remotely suggests that the Court should apply any standard on the Motion other than the stringent standard for summary judgment applied at the Hearing on the SJ Motion, which led to the denial of the same.  Instead, in *S.P. Richards Co.,* applied the "proper standard of review" for reconsidering an order vacating a default judgment, such as (i) "'the decision to vacate a default judgment is left to the sound discretion of the trial court'", *S.P. Richards Co.*, 2019 WL 4127147, at *2, *4, *quoting Harad v. Aetna Cas. & Sur. Co*., 839 F.2d 979, 982 (3d Cir. 1988); and (ii) "Courts in this circuit must also consider the Third Circuit's preference for deciding disputes on their merits, and its general disfavor of default judgments", *id., citing In re Bressman*, 874 F.3d 142, 153 (3d Cir. 2017).

Contrary to the Trustee's contention, Discover would clearly be prejudiced by this Court's reconsideration of its denial of the SJ Motion and reversal of that denial, as Discover's claim would thus be subordinated under Section 510(b) – that reversal would be tantamount to a final decision on the merits of the sole colorable claim in the Complaint.  In *S.P. Richards Co.*, 2019 WL

6

4127147, at *5, the Court stated that the plaintiff "would not be unduly prejudices by vacatur of the default judgment" and that its claimed prejudice in the form of difficulties obtaining discovery from the defendant could be addressed by the Court.  Lack of prejudice of that nature bears no relationship to the prejudice to Discover if the Court's denial of the SJ Motion is reversed.

The Trustee cites the three prong test for reconsideration, but argues that on an interlocutory order, he need not satisfy that test, and that he need only satisfy the lesser "consonant with justice" reconsideration standard because an interlocutory order is subject to revision at any time prior to final judgment.  This platitude ignores the reality that this Court's reversal of its denial – and thus grant - of the SJ Motion will in effect enter final judgment in the Adversary Proceeding.  Further, the Motion fails to even address, much less explain, how it would be "consonant with justice" to reverse the Court's denial of the SJ Motion, which was predicated upon findings that (i) the cases Section 510(b) authorities relied upon by the Plaintiffs were distinguishable, (ii) the holding of *In re Mobil Tool Int'l, Inc.*, 306 B.R. 778 (Bankr. D. Del. 2004) was apposite and supported a finding that the Debenture was not a security for 510(b) purposes, and (iii) that myriad factual disputes exist that precluded entry of summary judgment.  Thus, even under the claimed "consonant with justice" standard, the Motion should be denied.  The Trustee cites no authority for the ludicrous proposition that the movant for reconsideration of a denied summary judgment motion is relieved from the stringent burden of demonstrating that no material disputes of fact exist that would preclude entry of summary judgment.

7

**B.      The Trustee's Motion Mischaracterizes the Section 510(b) Authorities and the Reves Doctrine Just as the Plaintiffs did in the SJ Motion, and the Court Should Reject that Approach Again.**

**1.      Notwithstanding 11 U.S.C. § 101(49)(A)(v), the Debenture is Not a Security for Purposes of 11 U.S.C. §510(b).**

The Motion urges the same rote reading of Section 510(b) that the Plaintiffs did during the Hearing.  As in the prior case, this argument relies upon a tortured reading of the cases cited on the SJ Motion, each of which the Court found distinguishable during the Hearing.

The Trustee argues that *In re Enron Corp., et al.,* 341 B.R. 141, 150 (Bankr. S.D.N.Y. 2006) holds that 11 U.S.C. § 510(b) supports the Trustee's specious theory that a debenture is a security.  Discover distinguished *In re Enron* from the facts at hand in its opposition to the SJ Motion.  *Enron* centered on employee-stockholders whose Enron stock value declined, causing the employees' retirement savings to diminish.  In response to the decline in the stock value, the Enron employees filed claims alleging fraud and breach of contract. In contrast, here Discover does not calculate its claim based on the decline in value of Immune's stock, but rather seeks only to recover the principal and other amounts due pursuant to the Debenture.

The Motion cites *Robinson v. Shell Oil Co*., 519 U.S. 337 (1997) for the proposition that the Court cannot look beyond the pertinent statutes to determine if the Debenture is a security. This argument ignores the case law cited in Discover's opposition to the SJ Motion that looks beyond form to the facts of the transaction at issue.  Plaintiffs' counsel strenuously advocated this position at the Hearing, and this Court rightly rejected the same.

> MR. MAIRO: . . . What should control is the plain language of the bankruptcy code and the plain language of the bankruptcy code is under 510(b) a convertible debenture is a security and any claims arising under the 510(b) are subordinated. . . . (Apr. 1 Tr. at 26: 2-6.)

8

THE COURT: All right. Okay. So you're -- and that's where I have the problem is that your argument is that a convertible debenture is automatically subordinated under 510 even if it's not converted and I have a big problem with that argument. . . . But I can't give summary judgment on that because I don't buy that every single convertible debenture is automatically subordinated under 510 which is what the argument is and I reject that argument. . . . (Apr. 1 Tr. at 39:20-40:4.)

THE COURT: I disagree. I'm sorry. I can't, I don't think this, I don't think this is in any way the type of transaction that automatically gets subordinated. I just don't, I just don't see it -- I don't see it. I can't grant it as a matter of law. I just can't. I think there's UCC filings, there's securities filings, there's statements by the debtor's principles, there is the actions that were taken by Discover that were -- some of them were, some of them were consistent with someone who has equity and that was when they converted and they converted, and they're not, they have no claim based on that, and they would -- if they made a claim based on that, that would be subordinated, or the claim for example they have one of many defaults is the failure to register, reserve, issue, whatever, all the shares that were needed to do this, that needed to do the conversion. And Discover and the debtor never did it and that was a breach and to me that is something that would [*sic*] be damages that relate to the purchase and sale of a security because they didn't convert the security. They didn't -- I mean, they didn't register the security, they didn't issue securities and that would be subject to subordination under <u>Telegroup</u> and cases like that. But this one wasn't converted and I just can't ignore that fact. I just can't, especially on a summary judgment motion where I'm giving all inferences in their favor. And I am not, as I said before, I know everybody's repeating themselves, but I'm just not prepared to hold that a convertible debenture that's secured is automatically subordinated under 510. That reads too much into 510, goes too far in my view on this date of the record. So that's where I am on that. So I would deny summary judgment in connection with the 510(b) claim and but I still need to deal with the conversion and I, and I'm ready to address that.  (Apr. 1 Tr. at 40:17-41:23.)

In so ruling, this Court properly distinguished *In re Telegroup, Inc.*, 281 F.3d 133

(3d Cir. 2002), the *dicta* in *In re NAL Financial Group, Inc.*, 237 B.R. 225 (Bankr. S.D.

Fla. 1999), and their ilk and instead looked to the analogous fact pattern in *In re Mobil Tool*

*Int'l. Inc.*, 306 B.R. 778, 782 (Bankr. D. Del. 2004).  In that case, once investors exchanged

stock for a promissory note, "they removed the variable nature of their investments and

placed themselves in the position of general creditors."  The same logic applies here:  as

9

the Debenture was largely never converted, it remains a debt obligation of Immune, which Immune's representatives acknowledged under oath.

> **2.    As Explicated in Discover's Opposition to the SJ Motion, Securities Laws Demonstrate That the Debenture is Debt, not Equity.**

In the Motion, the Trustee rehashes the same misleading interpretation of *Reves, et al. v. Ernst & Young*, 494 U.S. 56 (1990) that was unsuccessfully proffered by the Plaintiffs in the SJ Motion.  The Trustee argues that the *Reves* test mandates that the Debenture be deemed a security.  Discover addressed *Reves* in its opposition to the SJ Motion:  in *Reves*, the Supreme Court clarified the meaning of "note," and thereby greatly limited the types of debt transactions falling under the definition of a security.  *Reves*, 494 U.S. at 63; *Robyn Meredith, Inc. v. Levy*, 440 F. Supp. 2d 378, 383 (D.N.J. 2006).  *Reves* employed a "family resemblance" test that determines that a note is deemed a security unless it bears a "family resemblance" to judicially enumerated instruments that are not recognized to be securities.  *Reves*, 494 U.S. at 63. Interestingly, the Motion makes no mention of *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946).  *Howey* further supports the *Reves* holding that commercial loans, such as the 2018 Transaction, that are secured by the assets of a business are not securities.

To determine whether a note – and, by analogy, the Debenture – resembles one of the exceptions, courts analyze four factors under the *Reves* test: (1) the motivations that would prompt reasonable parties to enter into the transaction; (2) the plan of distribution of the instrument; (3) the reasonable expectation of the investing public; and (4) whether some factor, such as the existence of another regulatory scheme, significantly reduces the risk of the instrument, thereby rendering application of the securities law unnecessary.  *Reves*, 494 U.S. at 66-67; *Intelligent Dig. Sys., LLC v. Visial Mgmt. Sys.*, 683 F. Supp. 2d 278, 284 (E.D.N.Y. 2010).  Because "note" is a

10

broad term that encompasses instruments with widely varying characteristics and uses, courts must hew to the concept and purpose of the transaction at issue. *Reves*, 494 U.S. at 62.

This analysis results in  case law holding that most commercial loan transactions are excluded from the definition of a "security." *See In re CPW Acquisition Corp.*, 2009 Bankr. LEXIS 3607, at *6 (Bankr. S.D.N.Y. Nov. 16, 2009) ("[A] loan transaction is not generally understood in the financial industry to involve any issuance of securities…[.]"). The mere fact that a note used in a loan transaction is convertible to stock does not change the analysis. *See, e.g., Intelligent Dig. Sys.*, 683 F. Supp. 2d at 284. Application of the four factors of the *Reves* test to the 2018 Transaction compels the conclusion that Discover's claim does not even arise out of a "security" and is, therefore, not subject to Section 510(b) subordination. In terms of the *Reves* test, the Trustee rehashes the faulty analysis posited by the Debtors and the Committee in the SJ Motion.

**Motivation of the Parties.** The Trustee argues that Discover and Immune entered into the SPA "to raise money for the general use of a business enterprise." However, under this factor, where the transaction is connected to a commercial purpose, a note or debenture is less likely to be considered a security. *Id.*; *Banco Espanol de Credito v. Security Pac. Nat'l Bank*, 973 F.2d 51 (2d Cir. 1992). Here, the price to be paid is not tied to the future success of the borrower, but is rather a contractual amount that must be paid whether or not the borrower's business is positively affected by the transaction. Accordingly, this factor weighs against the finding of a security. *Intelligent Dig. Sys.*, 683 F. Supp. 2d at 284. When the Debenture, Agreement, the IP Security Agreement and the other Debt Documents, all dated October 9, 2019, are viewed in their entirety and read fairly, it is clear that the intent was for Discover to act analogous to a bank or private lender.

11

This Court recognized as much in rejecting the Committee's counsel's argument during

the Hearing that the Debenture "falls squarely in 510(b)":

> THE COURT: You know what, I think it's -- your -the 510(b) argument is a much
> better one than the ones we've heard about last week or two weeks ago -- I
> understand it's arguable. I understand that the position that the debtor and the
> Creditors Committee are taking but I don't think -- the issue with 510 was that an
> equity holder would elevate their claim to -- that was really just, that was really,
> you know, banking on profits and banking on depreciation in value could on a par
> with the unsecured creditors by claiming breach of that agreement. But here we
> have something different. We have -- it was $2 million advanced on -- with an
> interest-rate and security. And so it's, to me, that's a different transaction than what
> was intended to be covered by 510.  (Apr. 1 Tr. at 19:22-20:9.)

The conversion feature of the Debenture was included as a means to reduce the principal

of the loan made by Discover thereunder to reduce Discover's risk on the loan.  Kirkland Dec. I,

¶ 52; Kirkland Dec. II, ¶ 11.  Therefore, Discover's claim is no different from the claims of other

secured lenders in the cases that this Court presides over, and cannot be subordinated under Section

510(b).

**Plan of Distribution.** The Trustee argues that a debenture "is an instrument in which there

is 'common trading for speculation or investment,'" but completely – and intentionally- ignores

the reality of the 2018 Transaction.  The Debenture is not "offered and sold to a broad segment of

the public." *Intelligent Dig. Sys.*, 683 F. Supp. 2d at 285.  The 2018 Transaction was a single,

private transaction, not an instrument that was offered to "a broad segment of the public." Id.;

*accord Equitable Life Assurance Society of the United States v. Arthur Andersen & Co.*, 655 F.

Supp. 1225, 1243 (S.D..N.Y. 1987) (note evidencing an "isolated transaction" and not designed

for public trading, held not to be a security).  Indeed, the Trustee alludes throughout the Motion

that Debtors and Discover thoroughly negotiated the 2018 Transaction.  During the Hearing, this

Court recognized that, just because a note or debenture falls within the statutory definition of a

12

security, that does not mean that the instrument is automatically subordinated under Section 510(b):

> THE COURT: What I don't -- but I don't, I don't -- you know, 510(b) doesn't mean just because it's within the definition of security, security includes a note. And there's in the definition of security includes the note and there's myriad cases that where a note is not subordinated under 510(b) even though it's a security. That's not, that's the, that's not the proper analysis. You look at what the underlying transaction was and here, you know, if you look at even like the Telegroup and things like that it was because they failed to register the security, so it arose, the claim arose out of the security. But here, it is, it's a note or debenture, a instrument that both Rabin and Fiorino said was debt until it was converted and it was only converted for $538 worth. So how do I give summary judgment on that? I --(Apr. 1 Tr. at 15:15-16:24.)

**Reasonable Expectations of the Investing Public.**    The Trustee argues that the expectations of the trading public are that a debenture is a security, which is nonsense.  The trading public has no knowledge of this private loan transaction, much less has any expectations about same.  Moreover, there is no "investing public" because the Debenture is not a publicly traded asset.  There are only two parties, Discover and Immune, to a private transaction.  Thus, this factor weighs against a finding that the Debt Documents and 2018 Transaction constitute a security. *Intelligent Dig. Sys.*, 683 F. Supp. 2d at 285; *accord Benedict v. Amaducci*, 1995 U.S. Dist. LEXIS 9681, 1995 WL 413206 *10 (S.D.N.Y. 1995) (fact that there was no "public expectation that the notes would be traded as securities" mitigates against finding that notes were securities).

**Alternative Regulatory Scheme.**    Trustee argues that the federal securities laws are the only regulatory scheme that applies to this Debenture to reduce its risk.  Even if there is not a regulatory scheme outside of the securities law that applies, the transaction at issue – a "one time business transaction between sophisticated parties" – does not fall under the "broad investment scenario" covered by the securities laws.  This factors weighs against the finding of a security. *Intelligent Dig. Sys.*, 683 F. Supp. 2d at 285-86.  As discussed above, this is the exact scenario

13

with the 2018 Transaction. Discover's claim arises out of the Debenture, which is not a security, and thus Section 510(b) does not apply to the 2018 Transaction.

### 3. The Definitions in the Agreement are Irrelevant to the Determination of the Debenture as Debt.

The Trustee continues the Plaintiffs' obsession with the defined terms in the Debt Documents, as if these contractual labels somehow override the true nature of this debt transaction and the intentions of the parties. The Court rightly perceived the essential debt nature of this transaction as reflected in the Apr. 1 Tr. citations set forth above.

The Trustee cites *Sunshine Shopping Ctr., Inc. v. Kmart Corp.*, 85 F. Supp. 2d 537, 540 (D.V..I. 2000) in support of the argument that the Agreement mandates that the Debenture be deemed a security. However, at the Hearing, the Court perceived the substantive terms of the Debt Documents to conclude exactly the opposite: they contain a security agreement, collateral, interest rate and other indicia of a debt obligation. The Trustee seeks to obfuscate the obvious intentions of the parties. "In examining a contract, the Court is to interpret the contracting parties' intent as objectively manifested by them and make a preliminary inquiry as to whether the contract is ambiguous." *Id.*

The history and structure of the 2018 Transaction and the terms of the Debt Documents demonstrate that the risks assumed by Discover in the 2018 Transaction were those inherent in the repayment of a fixed debt and not those inherent in an equity transaction. The Trustee's argument to the contrary intentionally seeks to confuse the obvious purpose and intent of the 2018 Transaction. The features of the Debt Documents cited by the Motion are unavailing. The conversion feature was largely intended to enable reduction of the principal balance of the loan. Kirkland Dec. I, ¶ 52; Kirkland Dec. II, ¶ 11. The $530 of the Debenture that Discover converted

was less than one tenth of one percent of the Face Value of the Debenture.  The definition of

Discover as Investor in the Debt Documents is irrelevant, no matter how many times counsel to

the Committee and the Trustee count the occurrence of the term.  The fact that interest – a prime

indicia of a debt – can be paid with stock is likewise a method of reducing Immune's debt

obligations under the Debenture.  The amendment of the Agreement to permit Immune to authorize

sufficient shares to enable the conversion of the Debenture was likewise aimed at reducing the

principal balance of the loan.  This Court correctly perceived that the Debenture is debt until

converted, and the fact that the Trustee articulates the Plaintiffs' flawed arguments to the contrary

in a more measured fashion than that offered by Committee counsel at the Hearing does not change

that fact.

> **4.**      **The Fact that the Debenture has not Converted is Critical, as the Court Correctly Perceived.**

The Trustee argues that the fact that the Discover has not converted the Debenture does not

matter, and that this Court should essentially reverse its month-old ruling on the SJ Motion and

grant summary judgment on Section 510(b) now.  This Court rejected this position at the Hearing:

> THE COURT: But I'm saying to you, Mr. Mairo that the definition of security in
> the bankruptcy code or wherever you want to fit it in under the SEC, whatever you
> want to say, you know, it could include a note.  There's – it could include a
> debenture.  If you look at 101 one of the things that it talks about a security is a
> note.   That doesn't automatically, that just doesn't mean that therefore it's
> automatically subordinated.  (Apr. 1 Tr. at 17:8-15.)

> THE COURT:  No, [Rabin and Fiorino were] talking about, they were talking about
> it in the sense of what it really is and was and you're asking me to disregard what
> the people who negotiated the deal said it was in favor of a very, very technical
> argument that it doesn't matter what they say under oath and it doesn't matter what
> they say in their securities filings, you've still got to subordinate it.  (Apr. 1 Tr. at
> 18-19:24-5.)

THE COURT: All right. Okay. So you're -- and that's where I have the problem is that your argument is that a convertible debenture is automatically subordinated under 510 even if it's not converted and I have a big problem with that argument. I'm sorry. You make excellent arguments. You're very well prepared. You've done a great job. You've done a great job in the case. But I can't give summary judgment on that because I don't buy that every single convertible debenture is automatically subordinated under 510 which is what the argument is and I reject that argument. (Apr. 1 Tr. at 39:20-40:4.)

The Trustee cites *In re NAL Financial Group, Inc.*, 237 B.R. 225 (Bankr. S.D. Fla. 1999) to argue that, even though the Debenture was not fully converted, the Debenture should be ruled a security. First, as the Court recognized during the Hearing, the section of *NAL Financial* that the Trustee relies upon is dicta:

MR. MAIRO: . . . And, Your Honor, the one case that is similar factually is the NAL Court's Decision out of Florida. That case involved a convertible debenture. That Court subordinated the claim of the claimant under 510(b).

THE COURT: But didn't they convert it, didn't they convert -- it was converted.

MR. MAIRO: It was converted but, Your Honor, the court said even if it wasn't converted because of the nature of the instrument it would fall within 510(b).

THE COURT: Yes, and that's, that (a) but the way you just said it is in dicta completely; and (b) I don't agree with that. That makes no sense to me. Then why do you have a convertible debenture. So just because it's convertible it means it's always a common share, it makes no sense and that's why I think Rabin and Fiorino were telling the truth.  (Apr. 1 Tr. at 18:2-16.)

Unlike the claimant in *In re NAL Financial Group, Inc.*, Discover asserts a claim under the Debenture for the unconverted balance of its Face Value, thus evidencing an intent to be repaid the debt represented by the unconverted Debenture.  The claimant in *In re NAL Financial Group, Inc.* converted its debenture to stock, sold the stock, then sued the debtor for its failure to register the stock, reducing the claimant's return on the stock sale.  Nothing remotely like that has occurred in this case.  *In re NAL Financial Group, Inc.* is distinguishable and should again be disregarded.

16

The Trustee cites *In re Betacom of Phoenix, Inc.*, 240 F.3d at 829-30 (9th Cir. 2001) to argue that the Debenture is a security because it entitles Discover to equity.  This effort fails because, unlike the situation in *In re Betacom of Phoenix, Inc*., 240 F.3d at 829-30 (9th Cir. 2001), Discover's claim against Immune does not arise out of Immune's failure to deliver stock.  In Betacom, the subordinated claim arose out of a merger agreement executed in 1991 pursuant to which the sellers were to receive stock in the acquiring corporation as consideration for their stock in the acquired corporation.  The sellers were, in fact, hoping to benefit from an increase in the value of their stock in the acquirer once the acquirer had finalized an IPO.  *Betacom*, 240 B.3d at 826, 830.

The acquiring corporation never delivered stock to the sellers, and in 1992 the sellers sued the acquirer.  In their original complaint and their first three amended complaints, the sellers sought the stock to which they were entitled.  *Id.*, at 826-27.  Only in 1996 did they assert claims for damages as a result of the acquirer's breach of the merger agreement.  *Id*.  In subordinating the seller's claims pursuant to § 510(b), the Ninth Circuit considered both the seller's delay—to the detriment of parties who extended credit to the debtor after the merger agreement—in asserting their damages claim and their obvious intent to benefit from an anticipated increase, as a result of the IPO, in the acquirer's stock.  *Id*., at 830.  A final distinction between the facts of *Betacom* and those of the instant case is that there is no indication that the sellers—in contrast to Discover— invested in any type of a debt instrument.  Thus, the facts of *In re Betacom of Phoenix, Inc.* are clearly distinguishable.

The Trustee cites language wherein that Court stated that, if the note claims were "linked to the Merger Agreement they should be subordinated.  *Id.,* at 832.  However, the promissory note in question was issued by the debtor in lieu of the delivery of stock, not from a loan advanced by

17

the creditor.  *Id.*  at 831-32.  The Trustee's reliance upon *In re Tristar Esperanza Properties*, LLC, 782 F.3d 492, 496 (9th Cir. 2015) is similarly misguided.  There, the claimant sought to purchase equity in the debtor, not make a loan, and filed a claim for damages for the failed sale of that equity interest.  *Id.* at 494-95.  Finally, the Trustee cites *In re Linn Energy*, 936 F.3d 334, 341 (5th Cir. 2019), but ignores the fact that Discover has not received any payments from the 2018 Transaction that could be construed as "deemed dividends."

The plain contrast between these cases and Discover's situation is that Discover's Debenture arose from a secured loan, not the purchase or sale of equity, and is not "linked" to the issuance of a security as the Trustee would have it.  The conversion feature is a option that never occurred, but for $530 worth.  As such, the balance of the Debenture remains what it was at the beginning – debt.  Section 510(b) does not authorize the subordination of claims for recovery of a debt.  *See, e.g., In re American Wagering, Inc.*, 493 F.3d 1067, 1072-73.

Finally, because the cases fail to support the Motion, the Trustee resorts to arguing that legislative intent and congressional policy is served by treating a convertible debenture as a security under Section 510(b).  In particular, the Trustee argues that Discover's supposed interest in Immune's upside is more akin to the expectations of an equity holder than a creditor, which only expects to be repaid its principal and legal interest. However, Discover was never going to convert and hold the common stock for investment, and thus was never going to have the upside potential of an equity holder.  Kirkland Dec. II, ¶11.  The history and structure of the 2018 Transaction and the terms of the Debt Documents show that the risks assumed by Discover in the 2018 Transaction were those inherent in the repayment of a fixed debt and not those inherent in an equity transaction.  The fact is that the Slain and Kripke article cited by the Motion is an exercise, as is the Motion and was the SJ Motion, in ideological purity that Courts, including this Court,

18

have rejected where the facts of a case demonstrate that a claim is based upon a debt.  The Trustee's

listing of the conversion feature of the Debenture, the $530 that was converted, and the false claim

that Discover asserts a $340 million claim in these cases do nothing to negate the fact that the

Debenture is and has always been – but for $530 – a first lien debt secured by the Collateral under

the Agreement and the IP Security Agreement.  Rabin and Fiorino both acknowledged as much

under oath.

    **C.**    **The Trustee Falsely Claims that Discover's Claim is for Damages "Arising From the Purchase or Sale" of a Security Under the Agreement.**

In the Motion, the Trustee rehashes the Plaintiffs' argument that the Court rejected at the

Hearing that Discover's claims should be subordinated under Section 510(b) on summary

judgment by applying the standard described in *In re Telegroup, Inc.*, 281 F.3d 133 (3rd Cir. 2002).

However, the Court rejected this argument:

> THE COURT: But [*Telegroup*] says, it says damages arising – it's damages, it is
> not – damages is things like, you know, not registering the stock, decline in value
> of the stock, doing those things.  Damages, doesn't the damages imply something
> different than a debt obligation?  (Apr. 1 Tr. at 38:8-12)
> …
> I think there's UCC filings, there's securities filings, there's statements by the
> debtor's principles, there is the actions that were taken by Discover that were –
> some of them were, some of them were consistent with someone who has equity
> and that was when they converted and they converted, and they're not, they have
> no claim based on that, and they would – if they made a claim based on that, that
> would be subordinated, or the claim for example they have one of the many defaults
> is the failure to register, reserve, issue, whatever, all the shares that were needed to
> do this, that needed to do the conversion.  And Discover and the debtor never did it
> and that was a breach and to me that is something that would [*sic]* be damages that
> relate to the purchase and sale of a security because they didn't … register the
> security, they didn't issue securities and that would be subject to subordination
> under *Telegroup* and cases like that. But this one wasn't converted and I just can't
> ignore that fact.  (Apr. 1 Tr. at 40-41:21-41).

The Court conducted a lengthy hearing on the arguments made in the SJ Motion, gave

Plaintiffs' counsel ample time for argument, and rejected those arguments.  In the second

19

paragraph of section B.i. of the Motion wherein the Trustee repeats these arguments, the Trustee inadvertently points to the exact reason that *Telegroup* is distinct from Discover's case: "*Telegroup* involved the subordination under Section 510(b) of claims held by *shareholders* of the debtor who filed proofs of claim seeking damages for the debtor's *breach of its agreement to use its best efforts to ensure its stock was registered* and freely tradeable." (Emphasis supplied.) Trustee's Memorandum of Law, etc. filed in support of the Motion [Doc 40-10, p. 22. As quoted above, at the Hearing this Court drew the exact distinction between *Telegroup* and the instant case that Discover makes here – *Telegroup* and its ilk involve damage claims for failure to register stock and similar acts that relate to the value of stock holdings. Discover's claim arises from Immune's default under and failure to repay the Debenture, which the Court properly recognizes as a "debt obligation", with "UCC filings" and a first lien securing the debt. As such, there is no nexus or causal relationship between that debt obligation and the sale of a security, so that *Telegroup* is inapposite. Discover's debt claim under the Debenture exists irrespective of the purchase or sale of stock because the vast majority of the Debenture upon which the claim is based was never converted to stock. *Telegroup*'s "but for" test that the Plaintiffs and the Trustee urge is simply inapplicable.

Accordingly, Discover's claim does not arise from the purchase or sale of a security for purposes of Section 510(b). The Motion concludes by the Trustee's again indulging in the fantasy that Discover asserts a claim for almost $340 million. Nothing could be further from the truth, and the Trustee knows it. Discover's $14.85 million proof of claim is calculated based upon the default interest and make-whole "Early Redemption Price" provisions of the Debenture alone, without regard to the Agreement or the conversion of any part of the Debenture to stock. This is a debt claim, pure and simple. The fact that the Notice of Default made reference to one of Immune's

20

defaults under the Debt Documents being the failure to register shares is of no moment.  That

default, like the others, caused Immune to be in default under the Debenture and for the same to

be immediately due and payable.  The Trustee's efforts to create an alternate reality, like those of

the Plaintiffs on the SJ Motion, is unavailing.  The Trustee's claims that Discover's debt claims

"relate to the SPA" are false.  Nothing about the calculation of Discover's claims comes from the

Agreement.  The Motion is meritless and should be denied.

### D.    Significant Material Factual Disputes Exist

In denying both the Plaintiffs' first summary judgment motion and the SJ Motion, the Court

noted that significant material factual disputes exist regarding, and significant facts exist

establishing, the nature of the transaction as a secured loan.  Thus, the Motion must be denied.

The Trustee rehashes the same argument that the 2018 Transaction between Immune and Discover

is nothing more than an arrangement to permit Discover access to Immune's stock.  Like the

Plaintiffs, the Trustee ignores Discover's loan to Immune and the vast security interest structure

set forth in the Agreement and the IP Security Agreement.  .

> THE COURT: But here we have something different.  We have – it was $2 million
> advanced on – with an interest-rate and security.  And so it's, to me, that's a
> different transaction than what was intended to be covered by 510.  (Apr. 1 Tr. at
> 20:6-9).

Discover has repeatedly demonstrated material factual disputes in its opposition to the SJ

Motion which is incorporated herein by reference.  The Trustee's Motion does nothing to resolve

those disputes, much less in the Trustee's favor.  This Court recognized that the Debenture is a

debt obligation of Immune to Discover, and that the same is secured by UCC filings and the vast

first lien structure set forth in the Security Agreement section of the Agreement and the IP Security

21

Agreement.  Moreover, the Court rejected the Plaintiffs' invalid contention that any debenture is automatically subordinated and that Section 510(b) should be robotically applied:

> THE COURT: All right. Okay. So you're -- and that's where I have the problem is that your argument is that a convertible debenture is automatically subordinated under 510 even if it's not converted and I have a big problem with that argument. I'm sorry. You make excellent arguments. You're very well prepared. You've done a great job. You've done a great job in the case. But I can't give summary judgment on that because I don't buy that every single convertible debenture is automatically subordinated under 510 which is what the argument is and I reject that argument. (Apr. 1 Tr. at 39:20-40:4.)

The Trustee's repetition of the same arguments urged by the Plaintiffs' on the SJ Motion is a waste of this Court's time and the parties' resources.  Nothing new is raised by the Motion, and the Trustee abjectly fails to identify any clear error of law committed by the Court in rightly denying the SJ Motion.  The Trustee's second bite at the summary judgment apple is unavailing. The Court properly distinguished *Telegroup* and the other Section 510(b) authorities from the facts of this case, rejected the mechanical application of that section, and properly perceived the Debenture for the debt obligation that it is.  Discover respectfully submits that the Court should do so again, and deny the Motion in its entirety.

## <u>CONCLUSION.</u>

For the reasons stated above, Defendant respectfully submits that the Trustee's Motion should be denied in its entirety.

Dated:  May 26, 2020                                    Respectfully submitted,
       Newark, New Jersey

                                                              **GIBBONS P.C.**

                                             By: <u>s/ Dale E. Barney</u>
                                                  Dale E. Barney, Esq.
                                                  David N. Crapo, Esq.
                                                  One Gateway Center
                                                  Newark, New Jersey  07102
                                                  Telephone:  (973) 596-4500
                                                  Facsimile:  (973) 596-0545
                                                    dbarney@gibbonslaw.com
                                                  dcrapo@gibbonslaw.com
                                                  *Attorneys for Defendant*
                                                  *Discover Growth Fund, LLC*

2832050.3 115785-100485