**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Telephone: (973) 597-9100
Facsimile: (973) 597-9119
Jonathan I. Rabinowitz
John J. Harmon
*Counsel for Jeffrey A. Lester, Chapter 7 Trustee*

| | |
|---|---|
| In re:<br><br>IMMUNE PHARMACEUTICALS, INC., et al.,<br><br>　　　　　　　　　　Debtors. | Case No. 19-13273 (VFP)<br><br>Judge: Vincent F. Papalia, U.S.B.J.<br><br>Chapter 7<br>(Jointly Administered) |
| IMMUNE PHARMACEUTICALS, INC.; IMMUNE PHARMACEUTICALS, LTD.; CYTOVIA, INC.; IMMUNE ONCOLOGY PHARMACEUTICALS, INC.; MAXIM PHARMACEUTICALS, INC.; IMMUNE PHARMACEUTICALS USA CORP.; and THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF IMMUNE PHARMACEUTICALS, INC., et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>DISCOVER GROWTH FUND, LLC,<br><br>　　　　　　　　　　Defendant. | Adv. Proc. No. 19-02033<br><br>Hearing Date and Time:<br>June 1, 2020 at 10:00 a.m. |

**TRUSTEE'S REPLY IN FURTHER SUPPORT OF MOTION PURSUANT
TO F.R.B.P. 9023 FOR RECONSIDERATION OF ORDER DENYING
PARTIAL SUMMARY JUDGMENT UNDER 11 U.S.C. § 510(b)**

Jeffrey A. Lester, Chapter 7 Trustee (the "Trustee") for Immune Pharmaceuticals, Inc., *et al.* (the "Debtors"), by and through his counsel, Rabinowitz, Lubetkin & Tully, L.L.C.,

respectfully submits this reply to the opposition (the "Opposition") filed by Discover Growth Fund, LLC ("Discover") to the Trustee's motion (the "Motion") for reconsideration pursuant to F.R.B.P. 9023 of the Court's Order denying the Plaintiffs' motion for partial summary judgment under 11 U.S.C. § 510(b).

## LEGAL ARGUMENT

### I. The Trustee's Motion Satisfies the Standard for Reconsideration

As set forth in the Motion, where a party seeks reconsideration of an interlocutory order, the Court may grant reconsideration when it is 'consonant with justice to do so'" without applying the traditional three-part test under F.R.C.P. 59. *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016); *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 472 F.Supp.2d 630, 632 (M.D. Pa. 2007). Discover fails to provide any authority to refute this proposition. Further, as Discover acknowledges in its discussion of the *S.P. Richards* decision, the ability to reconsider prior interlocutory orders can be rooted in the court's inherent powers. *See S.P. Richards Co. v. Arora*, 2019 WL 4127147, at *2. In *S.P. Richards*, although the Court noted the three part test traditionally applicable to F.R.C.P. 59 motions, the court did not ultimately apply that test. *Id.* at *4. The cases cited by Discover in its argument to strictly apply the traditional three-part standard applicable to final judgments address final orders rather than interlocutory orders. *See Carmichael v. Everson*, 2004 WL 1587894 (D.N.J. May 21, 2004); *N. River Ins. Co. v. CIGNA Reinsurance Co*., 52 F.3d 1194 (3d Cir. 1995).

Discover asserts that the Trustee should have brought his motion under F.R.B.P. 9024 and F.R.C.P. 60(b), relying on *S.P. Richards* and its discussion of the advisory committee notes to the Rule. However, F.R.C.P. 60(b) explicitly applies only to final judgments and orders. F.R.B.P. 9024 provides without any qualification that F.R.C.P. 60 is applicable in bankruptcy

cases. F.R.B.P. 9024 does not state that it applies to all orders of the bankruptcy court. The advisory committee notes of the Federal Rules cannot contradict the plain meaning of the text of a Rule. *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 540 (1991); *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 123 (1989); *United States v. Nahodil*, 36 F.3d 323, 328 (3d Cir. 1994) ("Although advisory committee notes are due some deference, they cannot be allowed to contradict the express language of a Rule and its authorizing statute.") Therefore, Discover's argument is unavailing. Further, where a motion for reconsideration of a final order is brought within the time limit of F.R.C.P. 59, courts treat motions filed under F.R.C.P. 60 as motions under F.R.C.P. 59. *See Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1514 (1st Cir. 1991); *Finch v. City of Vernon*, 845 F.2d 256, 258-59 (11th Cir. 1988). Still further, unlike F.R.C.P. 60(b), F.R.C.P. 59(e) does not explicitly state that it applies only to final judgments, but simply to judgments. Thus, the Trustee submits the motion was properly filed under F.R.B.P. 9023 and F.R.C.P. 59, and that in light of the interlocutory nature of the order, the "consonant with justice" standard is the appropriate standard for review. *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016); *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 472 F.Supp.2d 630, 632 (M.D. Pa. 2007).

Although Discover cites caselaw for the proposition that a motion for reconsideration may not raise issues previously considered by the Court, such opinions were written in the context of denials of motion for reconsideration, and all such cases appear to have been district court decisions. However, courts that grant motions for reconsideration do not appear to strictly apply this condition. *See, e.g., Atl. States Legal Found., Inc. v. Karg Bros.*, 841 F. Supp. 51, 54 (N.D.N.Y. 1993) ("after reconsidering its prior analysis in the context of the relevant statutory scheme, and with a better understanding of the interrelationship between the limitations imposed

on indirect dischargers and publicly owned treatment works, the court believes that its earlier ruling was in error"). The Trustee has presented facts and arguments which give the Court a better understanding that the Debenture is a security for purposes of the Bankruptcy Code and the Securities Acts, and that Discover's claim arises from the purchase of a security. Thus, to the extent the Court accepts the Trustee's argument that its denial of the Summary Judgment Motion was erroneous, the Court may grant the within Motion. Finally, as set forth in the Motion, to the extent the Court applies the traditional three part test under F.R.C.P. 59(e), the Trustee respectfully submits that the Court's decision on the Partial Summary Judgment Motion is predicated on a clear error of law, warranting reconsideration.

Discover's claim that it will be prejudiced if the Court grants reconsideration is unsupportable. Although Discover is correct that reconsideration would result in a decision on the merits that is negative to Discover, the mere fact that reconsideration will have a negative outcome on the merits cannot be the type of prejudice that is relevant to the test for reconsideration, because every reconsideration of an order results in a negative outcome to the movant's adversary, and reconsideration could never be granted. Contrary to Discover's argument, it is clear that the relevant type of prejudice to be considered by a court is loss of evidence, *S.P. Richards, supra,* at *5, or presumably a party's change in position in reliance on the judgment. Neither of those conditions obtain here, and therefore Discover has failed to demonstrate it will suffer any prejudice if the Court grants reconsideration.

**II. Discover is Incorrect that 11 U.S.C. § 101(49)(A) does not Control the Meaning of the Term Security in 11 U.S.C. § 510(b)**

Discover does not provide a plausible basis to conclude that the meaning of the term "security" in 11 U.S.C. § 510(b) should be determined without reference to the definition of that term in 11 U.S.C. § 101(49)(A). Discover's attempts to distinguish the caselaw cited by the

4

Trustee in support of this principle of statutory construction are all based on alleged factual distinctions, but Discover fails to make an affirmative case for a coherent alternative definition of the term. Discover cannot point to a case where a court declines to apply the plain meaning of the Bankruptcy Code's definition of the term "security," or any analogous case in which courts decline to apply the meanings of other terms defined by the Bankruptcy Code. Discover's argument that the Debenture "remains a debt obligation" does not preclude a finding that the Debenture is a security. In addition its broad definition of the term "security", the Bankruptcy Code also provides a definition of an "equity security" specifically for equity interests. 11 U.S.C. § 101(16). Thus, if Congress had intended 11 U.SC. § 510(b) to only subordinate claims based on securities that are equity interests rather than debt obligations, Congress would have used the term "equity security." Discover's construal of the term "security" to exclude debt obligations contradicts unambiguous statutory language, and ignores the coherent and consistent scheme provided by the Bankruptcy Code's distinction between a "security" and an "equity security." *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997). Discover's argument for disregarding 11 U.S.C. § 101(49)(a)'s definition of "security" in 11 U.S.C. § 510(b) must therefore be rejected. Accordingly, as set forth in the Motion, when interpreting the term "security" for purposes of 11 U.S.C. 510(b), the Court is bound by the definition set forth in 11 U.S.C. § 101(49)(A).

**III. Discover is Incorrect that the Debenture is not a Security Under Securities Law**

Discover is incorrect that the four part test which *Reves* articulated for notes is applicable to the Debenture. The Supreme Court developed the *Reves* test to determine whether a note, as distinguished from other types of enumerated instruments, falls within the Securities Acts' definition of the term "security". Before articulating this test, the Supreme Court noted that

"Congress' purpose in enacting the securities laws was to regulate *investments,* in whatever form they are made and by whatever name they are called. A commitment to an examination of the economic realities of a transaction does not necessarily entail a case-by case analysis of every instrument, however." *Reves v. Ernst & Young*, 494 U.S. at 61. The Supreme Court recalled a prior decision, *Landreth Timber*, in which it developed a test specifically to determine whether stocks fall within the definition of securities. *Id.* at 62 (citing *Landreth Timber Co. v. Landreth,* 471 U.S. 681 (1985)). In *Landreth Timber*, the Supreme Court held that

> an instrument bearing the name "stock" that, among other things, is negotiable, offers the possibility of capital appreciation, and carries the right to dividends contingent on the profits of a business enterprise is plainly within the class of instruments Congress intended the securities laws to cover. *Landreth Timber* does not signify a lack of concern with economic reality; rather, it signals a recognition that stock is, as a practical matter, always an investment if it has the economic characteristics traditionally associated with stock. Even if sparse exceptions to this generalization can be found, the public perception of common stock as the paradigm of a security suggests that stock, in whatever context it is sold, should be treated as within the ambit of the Acts.

*Ibid.* (citing *Landreth Timber*, *supra*, 471 U.S. at 687, 693). The Supreme Court contrasted a 'stock', "the quintessence of a security," with a 'note', which "may now be viewed as a relatively broad term that encompasses instruments with widely varying characteristics, depending on whether issued in a consumer context, as commercial paper, or in some other investment context." *Ibid.* Due to this distinctively broad range of meanings commonly assigned to the term 'note,' the Supreme Court found that the Securities Acts' definition of "security" "should not be interpreted to mean literally 'any note,' but must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts." *Ibid.* at 63. Accordingly, the four part test developed in *Reves* is not meant to apply to every type of instrument listed in the Securities Acts' definition of a "security."

6

Significantly, under the principles set by the Supreme Court in *Reves*, the ultimate question that must be answered to determine whether an instrument is a security is whether the instrument is an investment. 494 U.S. at 68-9 ("We have consistently identified the fundamental essence of a 'security' to be its character as an "investment.") The four part test is only necessary where characteristics of a particular note rebut the starting presumption that the note is an investment. *Id.* at 65. Thus, the four part test is not even applicable to all notes, let alone all instruments defined as securities by the Securities Acts.

The term 'debenture' does not have the same broad range of meaning as does 'note,' and is customarily grouped with stocks and bonds as an example of an ordinary investment security. In *Landreth Timber*, the Supreme Court relied on its prior decision in *Securities Industry* for its observation that 'note' is a "broad term that encompasses instruments with widely varying characteristics . . . ." *Landreth Timber*, supra, 471 U.S. at 694 (citing *Securities Industry Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 468 U.S. 137, 150 (1984)). In *Securities Industry*, in turn, the Supreme Court, construing the Glass-Steagall Act, contrasted the term 'note' with the terms 'stocks,' 'bonds,' and 'debentures' as examples of instruments commonly recognized as securities. *Securities Industry*, supra, 471 U.S. at 149 ("It is common ground that the terms "stocks," "bonds," and "debentures" do not encompass commercial paper.")

Discover fails to identify a single decision in which a court applied the *Reves* test to a debenture, or any instrument other than a note. Debentures do not have the same widely varying characteristics as notes. The family resemblance test adopted by *Reves* is based on "a list of instruments commonly denominated "notes" that nonetheless fall without the "security" category." *Reves*, 494 U.S. at 65. This list includes

> the note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its

assets, the note evidencing a 'character' loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized).

*Ibid.* (quoting *Exchange Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1137 (2d Cir. 1976)). Debentures are not commonly, if ever, used as alternatives or substitutes in these contexts.

A careful examination of *Reves*, and the cases on which it relies, reveal that the Debenture is a security as defined by the Securities Acts. The Debenture is indisputably an investment. In his certification filed in support of Discover's motion for relief from the automatic stay, Discover's principal described himself as a "manager of investment advisors to institutional investors" and stated "We have often invested in distressed, turnaround and other high-risk situations, including pre-clinical and clinical-stage pharmaceutical companies, where it is particularly important to understand the development of and place an accurate value on the intellectual property assets in the development stage." (*See* 2/25/2019 Dec. of John C. Kirkland, the relevant portions of which are annexed hereto as Exhibit **"A"** at ¶7). Discover's principal went on to describe the Securities Purchase Agreement, which included the Debenture, as an investment. (*See* Id. at ¶13, and sub-heading C. – "2018 Investment in the Debtor"). Moreover, in his opposition to the first motion for partial summary judgment filed by the Debtor and the Committee, Discover's principal reiterated that the Debenture is an investment, stating "Funds advised by DFM have invested $13 million in cash in Immune over five years, including the Debenture issued to Discover on October 9, 2018." (*See* 2/12/2020 Dec. of John C. Kirkland, the relevant portion of which is annexed hereto as Exhibit **"B"**, at ¶8).

For the foregoing reasons, the four part test in *Reves* is not applicable to the Debenture, because the test applies specifically to notes rather than debentures, and because Discover has

admitted that the Debenture was an investment, which *Reves* states is dispositive on the issue of whether a note is a security, and thus obviates the need for the four part test. Finally, to the extent the Court determines the four part test is applicable, the Debenture qualifies as a security under that test for the reasons set forth in the Motion.

### IV. Discover is Incorrect that the Definitions in the SPA Are Irrelevant to the Determination of Whether the Debenture is a Security

Discover repeatedly urges the Court to look beyond the text and definitions of the SPA to additional facts and circumstances which Discover believes help its argument. However, as set forth in the Motion, the SPA and the Debenture are contracts, and the intent of the parties to a contract is determined by the plain meaning of the text of the contract. *Sunshine Shopping Ctr., Inc. v. Kmart Corp.*, 85 F. Supp. 2d 537, 540 (D.V.I. 2000). The only time a Court may resort to parol evidence to ascertain the parties' intent is where the text of the contract is ambiguous. *Ibid.* Here, Discover has failed to identify any ambiguity in the text of the SPA or the Debenture that requires consideration of parol evidence. Further, the SPA contains a merger and integration clause providing that the SPA, and all documents executed in connection with the SPA, "contains the entire agreement and understanding of the parties, and supersedes all prior and contemporaneous agreements, term sheets, letters, discussions, communications and understandings, both oral and written, which the parties acknowledge have been merged into this Agreement. (*See* Section VII.G of the Debenture, annexed as Exhibit H to the Rabinowitz Cert. submitted in support of the Motion). Thus, Discover is barred by the plain language of the SPA from introducing testimony regarding the parties' intent that contradicts the terms and provisions of the SPA. Moreover, as set forth above Discover has admitted on the record that its intent was that the Debenture was an investment, which conclusively establishes that the Debenture is a security. *Reves*, 494 U.S. at 68-9.

**V. Discover is Incorrect that the Conversion Feature is Irrelevant to Whether the Debenture is a Security**

The conversion feature in the Debenture effectuated Discover's ability to obtain equity in the Debtor at will, and functioned as a stock option that allowed Discover to purchase the Debtor's stock at extremely advantageous prices. Discover provides a self-serving statement that it never intended to convert and hold the stock for investment, and thus was never going to have the upside potential of an equity holder. The assertion that an at-will ability to obtain equity interest in a company does not provide potential upside to an investor is self-refuting. Moreover, it is undisputed that when Discover did convert $530 of the Debenture into stock, it sold the stock for approximately $40,000, thus demonstrating that Discover negotiated for upside potential. (*See* Discover's Responsive Statement of Material Facts, Response to Statement 12 at p. 5-6, annexed hereto as Exhibit **"C"**).

**VI. Discover Fails to Refute the Demonstration that Legislative Intent and Congressional Policy are Served by Treating a Convertible Debenture as a Security**

Discover describes Professors Slain and Kripke's claim subordination analysis with disdain as "an exercise in ideological purity that courts … have rejected where the facts of the case demonstrate that a claim is based upon a debt." (Discover Opposition at p. 18-19). The Trustee's Motion provides substantial caselaw recognizing the Slain and Kripke's law review article was the foundation for Section 510(b). Discover fails to identify a single case that rejects the Slain-Kripke article and its analysis. There is no question in this case Discover bargained for the opportunity to share in profits to the exclusion of creditors by obtaining the ability to convert the Debenture into stock at any time in its sole discretion. (*See* Section I.G.1.a of the Debenture, a copy of which is annexed as Exhibit H to the Rabinowitz Cert. in support of the Motion).

Accordingly, it is clear that the Trustee's position is supported by legislative intent and Congressional policy.

**VII. Discover Fails to Rebut Application of the Third Circuit's "But For" Test Adopted in Telegroup**

In *Telegroup*, the Third Circuit held that where a claim would not have arisen "but for" a party's purchase of a security, and the party alleges a breach of the security instrument, the party's claim "arises from" the purchase or sale of a security and therefore must be subordinated under 11 U.S.C. § 510(b). *In re Telegroup, Inc.*, 281 F.3d 133 (3rd Cir. 2002). In so holding, the Third Circuit acknowledged it was adopting the broad reading of the statute proposed by the Debtor. *Id.* at 135-36. Discover attempts to escape the broad reach of the *Telegroup* test by arguing that the claim in *Telegroup* was brought by a shareholder, and its claim is based on the Debenture rather than the SPA, and the majority of the Debenture was not converted into stock. However, as set forth above, the Debenture is a security, and therefore it is irrelevant that Discover relies on the Debenture rather than the SPA to assert its claim. Moreover, in a case cited with approval by the Third Circuit in *Telegroup*, the Ninth Circuit explicitly held that claims based on promissory notes executed in connection with stock purchase agreements must be subordinated, thus negating Discover's attempt at distinguishing its claim in this case. *See In re Betacom of Phoenix, Inc.*, 240 F.3d 823, 832 (9th Cir. 2001) ("If the promissory note claims are linked to the Merger Agreement, they should be subordinated along with the breach of contract claim.")

Further, Discover's argument fails to acknowledge the inextricable link between the SPA and the Debenture, and the true nature of its investment in the Debtor. It is undisputed that the Debenture was drafted and executed as an exhibit to the SPA. The disparity between Discover's investment of $2 million in the Debtor, and Discover's claim against the Debtor in excess of $14

11

million, underscores that Discover's claim arises from the purchase of a security rather than a simple debt obligation.

Further, a review of the SPA demonstrates that the default giving rise to Discover's damage claim arose under the SPA. They include the failure to perform under the Debenture (Section V.G.(a) of the SPA), and the failure to register securities as required under the SPA (Section VI.A. of the SPA). Still further, the security interest on which Discover relies in asserting a secured claim was granted in the SPA, not in the Debenture, and the Debtor's bankruptcy filing was precipitated by Discover's steps to enforce its security interest under the SPA. (See Section V of the SPA).

A review of the SPA and the Debenture in the context of applicable securities laws and regulations further confirms why Discover's argument is erroneous because the Debenture and the SPA are so inextricably bound such that the failure to perform under the Debenture is a failure to perform under the SPA. As the Court is well aware, the Debenture is a convertible debenture. The Debenture gives Discover the right to convert any portion of the Debenture into stock at any time in its sole discretion. (See Section I.G.1.a. of the Debenture, annexed as Exhibit H to the Rabinowitz Cert.) Thus, the Debenture functions as a stock option that Discover can exercise at any time. However, the Debenture contains one significant restriction on Discover's conversion rights. Section I.G.7. of the Debenture imposes an issuance limitation that prohibits the Debtor from issuing stock to Discover to the extent that such stock issuance "would result in Holder owning more than 4.99% of all Common Stock outstanding immediately after giving effect to such issuance, as determined in accordance with Section 13(d) of the Exchange Act and the rules and regulations promulgated thereunder …." This limitation indicates why Discover chose to invest in the Debtor via a convertible debenture.

Section 13(d) of the Exchange Act requires a person who becomes a beneficial owner of more than 5% of a class of equity securities to file a disclosure statement with the SEC within ten days after such acquisition. *See* 15 U.S.C. § 78m(d). "Section 13(d) and the rules promulgated thereunder are reporting requirements intended to provide investors with early warnings of potential changes in control. … The beneficial ownership threshold established for disclosure of shareholder control under Section 13(d) is based on, at least in part, the power over corporate affairs associated with significant equity ownership. This power also implicates access to inside information and the potential for insider trading." *Levy v. Southbrook Int'l Investments, Ltd.*, 263 F.3d 10, 15–16 (2d Cir. 2001). In addition, Section 16(b) of the Exchange Act imposes strict liability on short swing trading by a person who is a beneficial owner of more than 10% of a class of equity securities, and who sells equity securities within six months after their purchase. *Id.* at 14. Thus, an investor may legally circumvent the strict liability penalties of Section 16(b) and the reporting requirements of Section 13(d) by investing in a convertible debenture, and converting the debenture in a piecemeal fashion over time. *See Lerner v. Millenco, L.P.,* 23 F. Supp. 2d 345, 347 (S.D.N.Y. 1998)

Here, Discover invested in the Debtor via a convertible debenture in order to obtain equity exposure in the Debtor while legally circumventing the reporting requirements of Section 13(d) and the short swing trading prohibition of Section 16(b) of the Exchange Act. A reasonable inference from Discover's claim is that it is based on the trading profit opportunities that Discover bargained for in the SPA, and that were lost when the Debtor failed to register its stock, and its stock value declined.

Accordingly, for foregoing reasons, Discover's claim would not have arisen "but for" its execution of the SPA and the Debenture, and therefore arises from the purchase or sale of a security for purposes of 11 U.S.C. § 510(b). *Telegroup*, *supra*, 281 F.3d at 143.

**VIII. Discover Fails to Identify a Dispute of Material Fact**

Discover asserts that there are material factual disputes that preclude summary judgment in the Trustee's favor, but is unable to identify a single factual dispute of material fact. There are no disputes over material facts. The only disputes with respect to the Trustee's § 510(b) claim are conclusions of law with regards to the characterizations of the SPA, the Debenture, and the other documents executed by the parties in connection with the SPA. Thus, the disputes in this case turn entirely on questions of law, and do not require the resolution of any further factual issues.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court overrule the Opposition, grant the Motion and enter an Order for partial summary judgment (i) subordinating Discover's Claim pursuant to 11 U.S.C. § 510(b) to the same priority of claims of holders of common stock, (ii) transferring to the estate any lien securing Discover's subordinated Claim pursuant to 11 U.S.C. § 510(c), and (iii) granting such other relief as is just.

**RABINOWITZ, LUBETKIN & TULLY, LLC**
*Counsel to Jeffrey A. Lester, Chapter 7 Trustee*

By:   /s/ Jonathan I. Rabinowitz
         JONATHAN I. RABINOWITZ

Dated:  May 29, 2020