UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
(973) 597-9100
Jonathan I. Rabinowitz
*Counsel for Jeffrey A. Lester, Chapter 7 Trustee*

In re:

IMMUNE PHARMACEUTICALS, INC., et al.,

　　　　　　　　　　　　　Debtors.

JEFFREY A. LESTER, Chapter 7 Trustee for
IMMUNE PHARMACEUTICALS, INC., et al.,

　　　　　　　Plaintiffs,

v.

DISCOVER GROWTH FUND, LLC,

　　　　　　　Defendant.

Order Filed on September 15, 2020
by Clerk
U.S. Bankruptcy Court
District of New Jersey

Case No. 19-13273 (VFP)

Chapter 7
(Jointly Administered)

Adv. Proc. No.: 19-02033

**CONSENT ORDER BETWEEN CHAPTER 7 TRUSTEE AND DISCOVER GROWTH
FUND, LLC RESOLVING MOTION PURSUANT TO BANKRUPTCY RULE 9011**

The relief set forth on the following pages two (2) through four (4) is hereby ORDERED.

**DATED: September 15, 2020**

Honorable Vincent F. Papalia
United States Bankruptcy Judge

**WHEREAS:**

A.     On February 17, 2019, Immune Pharmaceuticals, Inc. ("Immune Inc."), filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code");

B.     On February 22, 2019, Immune Inc.'s subsidiary Immune Pharmaceuticals, Ltd. ("Immune Ltd.") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and on February 26, 2019, Immune Inc.'s subsidiaries Cytovia, Inc., Immune Oncology Pharmaceuticals, Inc., Maxim Pharmaceuticals, Inc., and Immune Pharmaceuticals USA Corp. (together with Immune Inc. and Immune Ltd., the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, creating estates under the Bankruptcy Code ("Bankruptcy Estates");

C.     On March 6, 2019, the Court entered an Order granting the Debtors' motion for joint administration of their bankruptcy cases;

D.     On March 14, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of Immune Pharmaceuticals, Inc., et al. (the "Committee") in the Debtors' bankruptcy cases;

E.     On July 1, 2019, the Debtors and the Committee commenced the above captioned adversary proceeding (the "Adversary Proceeding") by filing against Discover Growth Fund, LLC ("Discover") a complaint (the "Complaint") asserting affirmative claims against Discover and seeking to reduce and subordinate Discover's claim against the Debtors;

F.     On April 2, 2020, the Court entered an Order granting Discover's motion to convert the Debtors' cases to Chapter 7;

G.     On April 3, 2020, Jeffrey A. Lester (the "Trustee") was appointed as Chapter 7 Trustee in the Debtors' cases and continues to serve as Trustee herein;

H.     On June 25, 2020, the Trustee was substituted in as Plaintiff in the Adversary Proceeding;

I.     On July 3, 2020, Discover served the Trustee and his counsel with a motion pursuant to Fed. R. Bankr. P. 9011 demanding that the Trustee dismiss certain counts of the Complaint (the "9011 Motion");

J.     The safe harbor provision set forth in Fed. R. Bankr. P. 9011(c)(1)(A), as extended, expired on close of business on August 3, 2020; and

K.     The parties hereto have resolved the 9011 Motion on the following terms and conditions:

It is **ORDERED** that:

1.    The Trustee is authorized to file, within ten (10) days of the Effective Date (as hereinafter defined), an amended complaint, substantially in the form annexed hereto as Exhibit "A" (the "Amended Complaint"), dismissing certain counts of the Complaint and modifying certain factual allegations contained therein.

2.    Upon the filing of the Amended Complaint, the counts, claims and allegations of the Complaint not contained in the Amended Complaint are dismissed with prejudice.

3.    Upon the Effective Date, Discover shall withdraw the 9011 Motion with prejudice. Any right of Discover to seek attorney's fees for allegations and/or claims asserted in the Complaint and/or Amended Complaint in the Adversary Proceeding against the Trustee or his counsel shall not be based on sanctions, including, without limitation, sanctions based upon Fed. R. Bankr. P. 9011, Fed. R. Civ. P. 11, 28 U.S.C. § 1927, the Court's inherent powers, and Section 105(a) of the United States Bankruptcy Code (the "Remedy").  Discover shall not seek recovery on the Remedy from the Trustee, his counsel or the Bankruptcy Estates in any case, action, proceeding, or matter, including the Debtors' main Chapter 7 cases (the "Main Cases") or in any other adversary proceeding or contested matter that arise in the Main Cases.

4.    The safe harbor period set forth in Fed. R. Bankr. P. 9011(c)(1)(A) shall be extended for a period of ten (10) business days after the Effective Date (the "Safe Harbor Period").

5.    By signing this Consent Order in the area indicated below, counsel for Discover and counsel for the Trustee represent to each other that each has authority to bind its respective client to the terms and provisions hereof.

6.    This Consent Order may be signed in counterparts by counsel in electronic or hard copy form.

7.      The parties hereto shall take such steps as are reasonably necessary to give effect to the purpose of this Consent Order.

8.      This Consent Order shall be effective (the "Effective Date") upon each of the following having occurred: (a) it being signed by counsel to the parties; (b) it having been entered by the Court; and (c) the Clerk of the Court having issued a certificate of no objection resulting from the service of a notice pursuant to Fed. R. Bankr. P. 9019 seeking approval of this Consent Order (the "Certificate of No Objection").

If the Certificate of No Objection is not issued within sixty (60) days from the date of entry of this Consent Order, the settlement embodied in this Consent Order shall be null and void except for the extension of the Safe Harbor Period and the parties hereto shall be left to their rights, claims, remedies and defenses.


AGREED AND CONSENTED TO
THIS _____ th DAY OF SEPTEMBER, 2020.

**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
*Counsel for Jeffrey A. Lester, Chapter 7 Trustee*

BY:    /s/ Jonathan I. Rabinowitz
        JONATHAN I. RABINOWITZ, Esq.

Dated: September 8, 2020

**GIBBONS P.C.**
*Counsel for Discovery Growth Fund, LLC*


By:    /s/ Dale E. Barney
        DALE E. BARNEY, Esq.

Dated: September 8, 2020

# EXHIBIT A

**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey NJ 07039
(973) 597-9100
Jonathan I. Rabinowitz
*Counsel for Jeffrey A. Lester, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>IMMUNE PHARMACEUTICALS, INC., et al.,<br><br>Debtors. | Case No. 19-13273 (VFP)<br><br>Chapter 7<br>(Jointly Administered)<br><br>Hon. Vincent F. Papalia |
| JEFFREY A. LESTER, CHAPTER 7 TRUSTEE FOR IMMUNE PHARMACEUTICALS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DISCOVER GROWTH FUND, LLC,<br><br>Defendant. | Adv. Proc. No.: 19-02033<br><br>Hearing Date and time: |

## AMENDED ADVERSARY COMPLAINT

Immune Pharmaceuticals, Inc. ("Immune"), Immune Pharmaceuticals, Ltd. ("Ltd."), Cytovia,

Inc., Immune Oncology Pharmaceuticals, Inc., Maxim Pharmaceuticals, Inc., and Immune

Pharmaceuticals USA Corp. (collectively, the "Subsidiaries" and, together with Immune and Ltd.,

the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and, together

with the Debtors, the "Plaintiffs") in the above-captioned jointly administered cases, filed the

initial verified adversary complaint (the"Complaint") against Discover Growth Fund, LLC

("Discover Growth" or the "Defendant") seeking judgments to: (i) fix the amount of the Defendant's

-1-

4212610

claim against the Debtors at $2 million; (ii) avoid the Securities Purchase Agreement (defined below) and Security Interest and Collateral Provisions (defined below) as fraudulent conveyances and preserve any related avoided liens for the Debtors' estates; (iii) deem the Security Interest and Collateral Provisions (defined below) of the Securities PurchaseAgreement (defined below) unenforceable due to duress; (iv) declare that any lien of the Defendant is limited to Immune's assets and does not extend to the assets or stock of other entities; (v) declare that any lien of the Defendant does not extend to the Ceplene assets by virtue of the Debtors' consummation of a Ceplene Transaction (defined below) by the Ceplene Transaction Deadline (defined below); (vi) declare that the Debtors' hypothetical judgment lien supersedes the Defendant's alleged lien on the Ceplene assets preserving any such lien for the Debtors' estates; (vii) avoid any purported lien interest in the Ceplene assets by the Defendant taken post-petition and preserve any such avoided lien for the Debtors' estates; (viii) subordinate the Defendant's claim (if any) to the same priority of claims of holders of common stock pursuant to section 510(b) of the Bankruptcy Code and transfer to the estate any lien securing the subordinated claim pursuant to section 510(c)(2) of the Bankruptcy Code; (ix) subordinate the Defendant's claim (if any) to the same priority of claims of holders of common stock pursuant to section 510(c)(1) of the Bankruptcy Code and transfer to the estate any lien securing the subordinated claim pursuant to section 510(c)(2) of the Bankruptcy Code; (x) contractually subordinate the Defendant's claim (if any) to a priority below that of general unsecured creditors pursuant to section 510(a) of the Bankruptcy Code and transfer to the estate any lien securing the subordinated claim pursuant to section 510(c)(2) of the Bankruptcy Code; (xi) award monetary damages to the Plaintiffs against the Defendant in an amount not less than $25 million for Defendant's breach of contract; (xii) award monetary damages to the Plaintiffs against the Defendant in an amount not less than $25 million for Defendant's breach of the implied covenant of good faith and fair dealing; (xiii) declaring that failure to subordinate the Defendant's claim would qualify as

-2-

unjust enrichment; and (xiv) sustaining the Plaintiffs' objection to the Defendant's purported claim.

1.      On April 2, 2020, this Court entered an order converting the Debtors' Chapter 11 cases to Chapter 7 cases.

2.      On April 3, 2020, Jeffrey A. Lester was appointed trustee of the Debtors' Chapter 7 estates (the "Trustee").

3.      On June 29, 2020, this Court entered an order substituting in the Trustee as Plaintiff in this Adversary Proceeding.

4.      The Trustee as the substituted Plaintiff filed this Amended Complaint.

## THE PARTIES

5.      Immune is a Delaware corporation with its principal place of business at 1 Bridge Plaza North, Suite 270, Fort Lee, New Jersey 07024.

6.      Ltd. is an Israeli corporation with its principal place of business located at Hillel Street #24, Jerusalem, Israel 94581.  Ltd. maintains assets in the United States.

7.      Cytovia, Inc. is a Delaware corporation with its principal place of business at 1 Bridge Plaza North, Suite 270, Fort Lee, New Jersey 07024.

8.      Immune Oncology Pharmaceuticals, Inc. is a Delaware corporation with its principal place of business at 1 Bridge Plaza North, Suite 270, Fort Lee, New Jersey 07024.

9.      Maxim Pharmaceuticals, Inc. is a Delaware corporation with its principal place of business at 1 Bridge Plaza North, Suite 270, Fort Lee, New Jersey 07024.

10.      Immune Pharmaceuticals USA Corp. is a Delaware corporation with its principal place of business at 1 Bridge Plaza North, Suite 270, Fort Lee, New Jersey 07024.

11.      The Committee is an official committee appointed in the Debtors' chapter 11 cases on March 14, 2019 which has been dissolved upon the conversion to the Debtors' cases to

4212610

Chapter 7.

12.    Upon information and belief, Discover Growth is a U.S. Virgin Islands limited liability company.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

14.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

15.    Venue is proper in this district pursuant to 28 U.S.C. § 1409.

16.    This adversary proceeding is commenced pursuant to sections 7001(1), (2), (8), and (9) of the Federal Rules of Bankruptcy Procedure.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**I.    The Debtors' Bankruptcy Cases**

17.    On February 17, 2019 (the "Immune Petition Date"), Immune filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing its chapter 11 case.

18.    On February 22, 2019 (the "Ltd. Petition Date"), Ltd. filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing its chapter 11 case.

19.    On February 26, 2019 (the "Subsidiaries Petition Date"), the Subsidiaries, each filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing their chapter 11 cases.

20.    As of the Immune Petition Date, the Debtors' assets included the following product lines: (i) Ceplene, (ii) bertilimumab, (iii) NanoCyclo, (iv) Amiket, and (v) certain other drug lines.

21.    The Debtors continued to operate their businesses and manage their property as

-4-

debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code through the conversion date.

## II.    2015 & 2016 Stock Purchases

22.    According to John C. Kirkland ("Mr. Kirkland"), a representative of Discover Growth, on July 28, 2015, an entity named Discover Growth Fund, a Cayman Islands limited liability company ("Discover Cayman"), invested $9 million in cash in Immune. *See* Motion of Discover Growth for Relief from the Automatic Stay [Dkt. No. 11] ("Stay Relief Motion") Declaration of John C. Kirkland, dated February 25, 2019 [Dkt. No. 11-3] ("Kirkland February 25th Declaration), ¶ 9.

23.    According to Mr. Kirkland, on September 6, 2016, Discover Cayman invested an additional $2 million in cash in Immune. *See* Kirkland February 25th Declaration, ¶ 11.

24.    Upon information and belief, Discover Cayman converted its 2015 and 2016 investments in Immune into stock and sold those stock interests, which resulted in significant profit for Discover Cayman.

25.    Upon information and belief, Discover Cayman is related to Discover Growth and Mr. Kirkland is related to both entities.

## III.    Discover Growth's 2018 Securities Purchase Agreement

26.    On July 6, 2018, Immune was delisted by Nasdaq, and began trading on the OTCQB over-the-counter market under the same symbol.    *See* Kirkland February 25th Declaration, ¶ 12.

27.    On October 9, 2018, the Defendant entered into a Securities Purchase Agreement (the "Securities Purchase Agreement") with Immune, pursuant to which the Defendant was issued a $5,500,000.00 face amount Senior Secured Redeemable Convertible Debenture (the

-5-

4212610

"Debenture") in exchange for $2 million in cash and a $3 million promissory note (the "Note"). The Securities Purchase Agreement is attached as Exhibit B to the Kirkland February 25th Declaration.

28.    At the time Immune entered into the Securities Purchase Agreement, its shares were priced at $0.08 per share and 49 million shares were outstanding. *See* Kirkland February 25th Declaration, ¶20.  In addition, Immune had approximately $15.7 million of liabilities due to be paid.

29.    Upon information and belief, the $5 million to be provided by Discover Growth was to enable the Debtors to effect the disposition of their bertilimumab and Ceplene assets.

30.    The Defendant only paid $2 million and has not satisfied the $3 million Note.

31.    The Securities Purchase Agreement defined the term "Securities" as including "the Debenture, the Warrant, the Conversion Shares and the Warrant Shares." *See* Securities Purchase Agreement, Ex. 1.

32.    Throughout the Securities Purchase Agreement, the Defendant is defined as and referred to as "Investor." *See id.*

33.    The Defendant is referred to as "Investor" a total of 258 times throughout the Securities Purchase Agreement; 219 of those instances occur in the agreement itself and the remaining 39 occur in the exhibits. *See id.*

34.    The Defendant is not referred to as a "creditor" or a "lender" in the Securities Purchase Agreement. *See id.*

35.    Immune is not referred to as a "borrower" in the Securities Purchase Agreement. *See id.*

36.    In the "Acknowledgments Regarding Investor" section of the Securities Purchase

Agreement, Immune acknowledged and agreed that Discover Growth "is acting solely in the capacity of arm's length purchaser [not lender] with respect to this Agreement and the transactions contemplated hereby . . . any statement made in connection with this Agreement or the transactions contemplated hereby is not advice or a recommendation, and is merely incidental to Investor's purchase of Shares." *See* Securities Purchase Agreement, §III.A.12.d.

37.    In fact, the only place that the term "lender" or "borrower" is used in the relevant documents is in the Note that obligates Discover Growth to pay Immune $3 million—it defines Discover Growth as "Borrower" and Immune as the "Lender." *See id.* at Ex. 8.

38.    Discover Growth made the following representation and warranty in the Securities Purchase Agreement:

> <u>Experience of Investor.</u> Investor, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of evaluating the merits and risks of the prospective investment in the Securities, and has so evaluated the merits and risks of such investment. <u>Investor is able to bear the economic risk of an investment in the securities and at the present time, is able to afford a complete loss of such investment.</u>

See Securities Purchase Agreement, § IIL.C.3 (emphasis added).

-7-

39.    The Securities Purchase Agreement further states:

A. Grant of Security Interest. To secure the Obligations[2], Company[3], as debtor, hereby assigns and grants to Investor, as secured party, a continuing first-position lien on and security interest in, all right, title and interest of the Company, whether now owned or existing or hereafter created, acquired, or arising, in and to all of the Collateral.

*See* Securities Purchase Agreement, §V.A.  "Collateral" is defined in the Securities Purchase

Agreement:

"Collateral" means all assets of the Company[4], including without limitation all personal property wherever located, both now owned and hereafter acquired, including, but not limited to, all equipment, fixtures, inventory, goods, documents, general intangibles, accounts, deposit accounts (unless a security interest would render a nontaxable account taxable), receivables, contract rights (including, but not limited to, all of Company's rights in franchise agreements, license agreements and market development agreements), chattel paper, patents, trademarks and copyrights (and the good will associated with and registrations and licensing of them), instruments, letter of credit rights and investment property, capital stock, partnership, membership and equity interests, of any kind or nature, and all additions and accessions to, all spare and repair parts, special tools, equipment and replacements for, software used in, all returned or repossessed goods the sale of which gave rise to, and all accessions, additions, amendments, modifications, replacements, and substitutions to, of or for the foregoing, and all proceeds, supporting obligations and products of

---

[2] Obligations" are defined as:

"Obligations" include the full and punctual observance and performance of all present and future duties, covenants, and responsibilities due to Investor by Company under this Agreement, the Debenture and the other Transaction Documents, including without limitation all present and future obligations and liabilities of Company for the payment of money (extending to all principal amounts, interest, late charges, fees, and all other charges and sums, as well as all costs and expenses payable by Company).

*See* Securities Purchase Agreement, Ex. 3, p.3.

[3]"Company" is defined as Immune. *See* Securities Purchase Agreement, p.1.

[4] See footnote 3.

the foregoing, except as set forth in the Disclosure Schedules. All terms which are used in this definition which are defined in the UCC shall have the same meanings herein as such terms are defined in the UCC, unless this Agreement shall otherwise specifically provide. Notwithstanding the foregoing, the Ceplene assets (as such term is defined in the Disclosure Schedules) shall not be deemed to constitute "Collateral" unless the Company has not closed a transaction involving the sale, *license*, divestment or partnering of the Ceplene assets (a "Ceplene Transaction") on or before March 31, 2019 (the "Ceplene Transaction Deadline"). For the avoidance of doubt, in the event that a Ceplene Transaction is not closed by the Ceplene Transaction Deadline, the Ceplene assets shall become and be deemed to be "Collateral" hereunder.

*See* Securities Purchase Agreement, Ex. 1.

40.    Upon information and belief, Immune intended and anticipated that Discover Growth would convert its investment into stock as it did with its 2015 and 2016 investments.

41.    The Securities Purchase Agreement provides:

The execution, delivery and performance of the Transaction Documents[5] by [Immune], the issuance and sale of the Securities and the consummation by [Immune] of the other transactions contemplated thereby do not and <u>will not</u> . . . <u>result in the creation of any Lien</u>[6] <u>upon any of the properties or assets of [the Debtors].</u> . . .

*See* Securities Purchase Agreement, §III.A.3.(b) (emphasis added)

---

[5] The Securities Purchase Agreement defines "Transaction Documents" as " this Agreement, the other agreements, certificates and documents referenced herein or the form of which is attached hereto, and the exhibits, schedules and appendices hereto and thereto." Securities Purchase Agreement. Ex. 1, p.4.

[6] The Securities Purchase Agreement defines "Liens" as "a lien, charge, security interest or encumbrance in excess of $250,000, or a right of first refusal, preemptive right or other restriction." Securities Purchase Agreement. Ex. 1, p.3.

4212610

42.    The Debenture, which was attached as an exhibit to the Securities Purchase Agreement, states:

> Upon any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, **after** payment or provision for payment of debts and other liabilities of the Corporation[7], prior to any distribution or payment made to any other creditors or the holders of any Preferred Stock or Common Stock by reason of their ownership thereof, the Holders of this Debenture will be entitled to be paid out of the assets of the Corporation available for distribution to its creditors an amount with respect to the then outstanding Face Value, plus an amount equal to any accrued but unpaid Interest thereon . . . .

Kirkland February 25th Declaration, Ex. A, § I.E.1. (emphasis added). Upon information and belief, pursuant to this provision, the Defendant would be treated as an equity investor of Immune and not paid at the creditor level in the event of a bankruptcy, liquidation or winding up of Immune.

43.    Consistent with treating obligations to Discover Growth as equity not debt, the Debenture provides that "Interest" could be satisfied through the issuance of Conversion Shares, (Kirkland February 25th Declaration, Ex. A, §C.2.) and on the maturity date, "all remaining outstanding Debenture will be automatically converted into shares of Common Stock" (*id.* at G.8.).

44.    The Defendant is defined as and twice referred to as "Investor" in the Debenture. *See* Kirkland February 25th Declaration, Ex. A; *see also*, Securities Purchase Agreement, Ex. 1.

45.    The Defendant is not referred to as a "creditor" or a "lender" in the Debenture. *See id.*

---

[7] Immune is referred to as "Corporation" in the Debenture. *See* Kirkland February 25th Declaration, Ex. A, § I.A.

4212610

46.     Upon information and belief, on October 29, 2018, Immune filed a preliminary prospectus to increase its authorized shares of common stock from 225,000,000 to 600,000,000 shares. *See* Kirkland February 25th Declaration, ¶ 20.

47.     Upon information and belief, on November 21, 2018, Immune filed a registration statement to register 123,333,333 shares of common stock for issuance to Discover Growth upon conversion of the Debenture. *See id.*

48.     Upon information and belief, on December 19, 2018, the stockholders approved the share increase, and the Debtor increased its authorized shares to 600,000,000. *See id.*

49.     Upon information and belief, on February 7, 2019, Immune filed a final prospectus indicating the registration statement had become effective automatically 20 days after filing. *See id.*

50.     Upon information and belief, on February 7, 2019, Immune's closing stock price "was $.008 per share, a decline of 90% in less than four months." *See id.*

51.     On February 12, 2019, which was five days before the Immune Petition Date, the Defendant issued a Conversion Notice with respect to a conversion of $530.00 of the Debenture into 9,017,067 Conversion Shares and Immune "issued the requested shares." *See id.* at ¶39.

52.     Upon information and belief, as of the Immune Petition Date (February 17, 2019), the Defendant either owned the 9,017,067 Conversion Shares or sold some (or all) of those shares to third parties for an unknown amount.

-16-

53.    Upon information and belief, after the Immune Petition Date, Discover Growth requested additional Conversion Shares equal to 9.9% of the then outstanding shares, which under the terms of the Securities Purchase Agreement, could only have been done after Discover Growth no longer held any of the earlier 9,017,067 Conversion Shares.

54.    The parties added a new Section IV.O. to the Securities Purchase Agreement that required Immune to use its "best efforts to increase the number of shares of Common Stock Company is authorized to issue in an amount sufficient to permit the full conversion of the Debenture . . . ." *See* Fiorino March 19th Declaration, ¶ 68; Kirkland February 25th Declaration, Ex. B. Section IV.O. continued: "In connection therewith, Company shall take all corporate action necessary to call a meeting of its stockholders" to obtain approval to increase its authorized common stock "in an amount sufficient to permit the full conversion of the Debenture and the exercise of the Warrant in accordance with their terms. . ." *See* Fiorino March 19th Declaration, ¶ 68; Kirkland February 25th Declaration, Ex. B.

55.    Upon information and belief, Immune prepared and on November 8, 2018 mailed proxy materials for a special stockholders' meeting to be held on December 5, 2018 at which stockholders would be asked to approve an increase in Immune's authorized common stock from 225 million to 600 million.

56.    Upon information and belief, Immune did not secure shareholder approval for the increase in authorized share count, and the special meeting had to be adjourned until December 19, 2018, when Immune finally received enough votes to approve the increase in its authorized capital stock. The Defendant alleges that it was not required to pay the Note because Immune failed to effect the registration of the "Conversion Shares" issuable to Discover.

57.     Upon information and belief, on November 21, 2018, Immune filed a registration to register 123,333,333 shares of common stock for issuance to Discover Growth upon conversion of the Debenture. *See* Kirkland February 25th Declaration, ¶ 20.

58.     Upon information and belief, Immune also faced problems requesting to register a total of 123,333,333 shares of common stock for resale by the Defendant (the "Registered Shares"). Upon information and belief, the SEC first requested more information regarding the amount of shares that Immune was requesting to be registered, and then a second letter from the SEC stated that the offering was not eligible to be made pursuant to Rule 415(a)(1)(i) under the Securities Act. *See* Fiorino March 19th Declaration, ¶¶ 72-75.

59.     Upon information and belief, during the time that Immune was negotiating with the SEC, the number of shares of common stock issuable as "Conversion Shares" ballooned to approximately 3.5 billion as a result of the significant decline in the conversion price of certain debentures and shares.

**IV.     Discover Growth Issues the Notice and Attempts to Sell the Debtors' Assets.**

60.     On February 8, 2019, the Defendant delivered to Immune a "Notice of Default and Notice of Sale of Collateral (the "Notice"). In the Notice, the Defendant alleged that Immune was in default of the terms of the Securities Purchase Agreement, and the Defendant purported to declare all obligations under the Securities Purchase Agreement to be immediately due and payable and alleged that the amount due and payable was $12.1 million.

61.     The Defendant provided subsequent notice to Immune on February 14, 2019 which alleged that the amount due and payable was $14.85 million.

62.     The Defendant scheduled a foreclosure sale of its alleged collateral for 10:00 a.m.

on February 18, 2019, a Federal holiday, in St. Thomas, U.S. Virgin Islands63.    Upon information

and belief, subsequent to receiving the Notice, the Debtors reached out to the Defendant to

attempt to negotiate an alternative to a sale of Immune's assets. The Debtors and the Defendant

were unable to reach a settlement *See* Fiorino March 19th Declaration, ¶ 50.

64.    The Debtors stated that if the Defendant intended to move forward with seeking to

conduct a sale of Immune's assets, Immune would have no choice but to file for bankruptcy

protection. *See* Fiorino March 19th Declaration, ¶ 89.

65.    Nevertheless, the Defendant declined to forbear from its intent to conduct a sale.

*See* Fiorino March 19th Declaration, ¶ 89.

66.    As a result of the Defendant's declining to forbear, Immune filed for bankruptcy

on the Immune Petition Date, just one day prior to the date of Discover Growth's proposed sale.

*See* Fiorino March 19th Declaration, ¶ 90.

67.    Upon information and belief, immediately prior to the Immune Petition Date,

Immune had a market capitalization of approximately $1 million (174 million shares

outstanding at a price of $0.008 per share). In addition, as of the Immune Petition Date, Immune

had approximately $15.4 million of liabilities due to be paid (not counting the disputed securities

related claims of the Defendant).

68.    As of March 19, 2019, the best proposal for bertilimumab was a one-time $4.5

million payment. *See* Fiorino March 19th Declaration, ¶ 93.

69.    On or about November 2018, Vector Therapeutics, Inc. ("Vector") paid Immune

$500,000 to gain an exclusive option to acquire worldwide Ceplene rights for total additional

fixed consideration of $14.5 million, including $2.5 million at closing, $4.5 million in 2019, and

$2.5 million in each of 2020, 2021 and 2022 and the assumption of certain Ceplene-related

liabilities from Immune, expected to total approximately $3.5 million. Vector reduced its offer to

-19-

purchase Ceplene assets for a total cash consideration of $2.5 million plus the assumption of certain Ceplene-related liabilities.

70.    Following the commencement of these bankruptcy cases, Discover Growth filed the Stay Relief Motion on February 25, 2019, about four days into the case and has asserted therein that it has a claim in the amount of $345,486,950.99.

71.    Specifically, Discover Growth asserts in the Stay Relief Motion that it is owed (i) over $6 million for the face amount due on the Debenture, (ii) nearly $15 million for the "Early Redemption Price" and (iii) nearly $325 million for monetary damages for Immune's purported breaches. *See* Stay Relief Motion, Ex. 2.

72.    Discover Growth asserts that its claim is secured and has a priority higher than general unsecured creditors.

73.    The Stay Relief Motion was opposed by the Debtors and the Committee, which argued, among other things, that the extent, nature, and validity of any of Discover Growth's claims (if any) have not been determined, and that even if Discover Growth can prove its claim, any such claim must be subordinated. *See* Dkt. Nos. 67 & 68.  The hearing on the Stay Relief Motion has been adjourned from time to time .  On June 23, 2020, the Court denied the Stay Relief Motion pending the outcome of this Adversary Proceeding. On August 19, 2020, an order was entered embodying such ruling.

74.    Discover Growth was listed as holding a disputed, unliquidated and contingent claim in the amount of $0.00 on Immune's Schedule D and a disputed, unliquidated and contingent claim in the amount listed as "Unknown" on Immune's Schedule F.

**V.    The Debtors Consummated a Ceplene Transaction By the Ceplene Transaction Deadline.**

75.    On March 30, 2019, Immune entered into a licensing agreement with Vector.

Under the licensing agreement (the "License Agreement"), Vector agreed to pay Immune

$100,000 for a thirty-day license "to use" the Ceplene assets (as defined in the License

Agreement), which license was subject to renewal.

76.    On April 16, 2019, Discover Growth filed a motion for a determination that (i) the

License Agreement is out of the ordinary course of business and is thus void *ab initio* and (ii)

said assets are now subject to Discover Growth's alleged first priority lien and security interest

[Dkt. No. 143] (the "DG Ceplene Motion").  On April 23, 2019, the Debtors filed their response

to the DG Ceplene Motion [Dkt. No. 151].  On April 25, 2019, the Committee filed its response

to the DG Ceplene Motion [Dkt. No. 154].

77.    The DG Ceplene Motion effectively concedes that Discover Growth's lien would

not attach to the Ceplene Assets if the License Agreement was approved.

78.    Among other things, the DG Ceplene Motion states, "if the License were a

legitimate transaction, and if the License actually closed by March 31, 2019, then the exclusion

of the Ceplene Assets from the Collateral exists . . . ." *See* DG Ceplene Motion, ¶36.

79.    Following a hearing on the DG Ceplene Motion, this Court approved the License

Agreement, *nunc pro tunc* to March 30, 2019.  The Court further denied the DG Ceplene

Motion's request that the Court deem the Ceplene assets subject to Discover Growth's lien and

security interest.  The License Agreement was subsequently extended by the parties.

**VI.    Discover Growth's Proof of Claim**

80.    Discover Growth filed a proof of claim on June 12, 2019.  *See*  Proof of Claim

No. 37-1 in Case No. 19-13273 ("Discover Growth's Proof of Claim").

81.    Discover Growth's Proof of Claim asserts a $14,848,569.00 claim for "[m]oney

loaned," and maintains that the claim is secured. *Id.*  The Proof of Claim asserts an annual

interest rate of 34%.  *Id.*

## FIRST COUNT

### (Fixing the Amount of the Defendant's Claim at $2 Million—Fed. R. Bankr. P. 7001(2))

82.    The Plaintiff repeats and realleges each and every allegation contained above as if set forth at length herein.

83.    Rule 7001 of the Federal Rules of Bankruptcy Procedure allows an adversary proceeding to "determine the validity, priority, or extent of a lien or other interest in property."

84.    According to the terms of the Debenture, the Defendant provided Immune with $2 million in cash and a $3 million promissory note.

85.    The Defendant never paid on the $3 million promissory note.

86.    Despite only ever investing $2 million in Immune, the Defendant asserts a claim for nearly $346 million.  The Defendant's claim consists of: (i) over $6 million for the face amount due on the Debenture (including $670,181.99 in interest); (ii) nearly $15 million for the "Early Redemption Price"; and (iii) nearly $325 million for monetary damages for the Debtors' purported breaches under the Securities Purchase Agreement.  *See* Stay Relief Motion, Ex. 2.

87.    Further, the Defendant specified that its attorney's fees on each of the foregoing amounts due is "[n]ot yet determined," leaving the door open to increase its alleged claim even further.

88.    Further, the Defendant claims that the current face amount of the Debenture is $5,499,470.00 plus interest at 32% per annum from October 9, 2018, as well as attorneys' fees and expenses.  *See* Kirkland February 25th Declaration, ¶ 50.  Upon information and belief, the alleged 32% per annum interest rate exceeds the statutory limit. The Early Redemption Price is unenforceable.

89.    The value of Discover's collateral has yet to be determined.

90.    If the value of Discover's collateral is $2,000,000 or less or Discover's claim is subordinated, under 11 U.S.C. §§ 502(b)(2) and 506(b), Discover is not entitled to accrue post-petition interest and attorneys' fees.

91.    Therefore, because Discover's claim should be subordinated, it should be fixed at $2 million.

**WHEREFORE**, the Plaintiff seeks judgment against the Defendant:

A.    declaring that the amount of the Defendant's claim is fixed at $2,000,000; and

B.    declaring that the 32% per annum interest rate and Early Redemption Price are unenforceable; and

C.    awarding such other and further relief in favor of the Plaintiff as this Court deems fair and equitable.

## SECOND COUNT

**(Avoiding the Obligations Arising From Securities Purchase Agreement and Debenture, and the Security Interest and Collateral Provisions of the Securities Purchase Agreement as Fraudulent Conveyances and Preservation of Any Related Avoided Liens for the Debtors' Estates—11 U.S.C. §§ 548 & 551)**

92.    The Plaintiff repeats and realleges each and every allegation preceding this paragraph as if fully set forth herein.

93.    Section 548 of the Bankruptcy Code provides that a trustee or debtor in possession "may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor" within two years before a bankruptcy filing if the transaction was actually or constructively fraudulent. *See* 11 U.S.C. § 548.

94.    The Securities Purchase Agreement was executed approximately four (4) months prior to the Immune Petition Date.

95.    Discover Growth only ever provided $2 million to Immune but has asserted a claim for nearly $346 million.

96.    To the extent Discover Growth has an a valid claim, it should be limited to no more than the amount it provided to Immune, i.e., $2 million and any obligation above that amount avoided under Section 548 of the Bankruptcy Code.

97.    Pursuant to Section 506(a) of the Bankruptcy Code, to the extent Discover Growth has a valid lien, such lien should be limited to no more than the value of its collateral.

98.    With the Securities Purchase Agreement and Debenture, Immune received less than a reasonably equivalent value in exchange for its transfers or obligations to Discover Growth.

99.    At the time the Securities Purchase Agreement was entered into, Immune was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital.

100.    At the time the Securities Purchase Agreement was entered into, Immune intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

**WHEREFORE**, the Plaintiff seeks judgment against the Defendant:

        A.    avoiding the obligations arising from the Securities Purchase Agreement and Debenture, and the Security Interest and Collateral Provisions of the Securities Purchase Agreement as fraudulent conveyances;

B.    alternatively, limiting Discover's claim and lien (if any) to no more

than  the amount it provided Immune, i.e., $2 million;

C.    preserving any of Defendant's alleged liens arising from the Securities

Purchase Agreement and the Security Interest and Collateral Provisions

for the benefit of the Debtors' estates; and

D.    awarding such other and further relief in favor of the Plaintiff as this

Court deems fair and equitable.

## THIRD  COUNT

### (Declaring that Any Lien of the Defendant is Limited to Immune's Assets and Does Not Extend to the Assets or Stock of Other Entities)

101.    The Plaintiff repeats and realleges each and every allegation preceding

this paragraph as if fully set forth herein.

102.    Only Immune signed the Securities Purchase Agreement.

103.    Ltd. and the Subsidiaries did not sign the Securities Purchase Agreement.

104.    Discover Growth's UCC-1 filings only reference Immune as the debtor.

105.  Discover Growth has no lien or right to assert a security interest in, to or against

Ltd. and the subsidiaries and any of their assets.

106.  Discover Growth has no lien or right to assert a security interest in, to or against

Cytovia, Inc., or any of its assets.

107. Discover Growth has no lien or right to assert a security interest in, to or against Immune Oncology Pharmaceuticals, Inc., or any of its assets.

108. Discover Growth has no lien or right to assert a security interest in, to or against Maxim Pharmaceuticals, Inc., or any of its assets.

109. Discover Growth has no lien or right to assert a security interest in, to or against Immune Pharmaceuticals USA Corp., or any of its assets.

**WHEREFORE**, the Plaintiff seeks judgment against the Defendant:

A.    declaring that Discover Growth's lien, if any, is limited to the assets of Immune and does not extend to the assets of any related entities; and

B.    awarding such other and further relief in favor of the Plaintiff as this Court deems fair and equitable.

### FOURTH COUNT

### (Declaring that Any Lien of the Defendant Does Not Extend to the Ceplene Assets)

110. The Plaintiff repeats and realleges each and every allegation contained above as if set forth at length herein.

111. On March 30, 2019, Immune entered into the License Agreement with Vector.

112. Under the License Agreement, Vector agreed to pay Immune $100,000 for a thirty-day license "to use" the Ceplene assets (as defined in the License Agreement), which license is subject to renewal. The license has since been extended by the parties.

113. Immune closed a transaction involving the license of the Ceplene assets on March 30, 2019—*i.e.,* before the Ceplene Transaction Deadline of March 31, 2019.

114. The DG Ceplene Motion filed by Discover Growth attempted to void the License Agreement.

115.    The DG Ceplene Motion effectively conceded that Discover Growth's lien would not attach to the Ceplene Assets if the License Agreement was approved.

116.    Among other things, the DG Ceplene Motion states, "if the License were a legitimate transaction, and if the License actually closed by March 31, 2019, then the exclusion of the Ceplene Assets from the Collateral exists . . . ." *See* DG Ceplene Motion, ¶36.

117.    Moreover, in the DG Ceplene Motion, Discover Growth requested that the Court deem the Ceplene assets subject to Discover Growth's lien and security interest.

118.    The Court approved the License Agreement effective as of March 30, 2019.

119.    The Court further denied the DG Ceplene Motion's request that the Court deem the Ceplene assets subject to Discover Growth's lien and security interest.

120.    Thus, the Defendant does not have a lien on the Ceplene assets.

**WHEREFORE**, the Plaintiff seeks judgment against the Defendant:

A.    declaring that any lien of the Defendant does not extend to the Ceplene assets; and

B.    awarding such other and further relief in favor of the Plaintiff as this Court deems fair and equitable.

## FIFTH COUNT

### (Avoidance of the Defendant's Alleged Lien on the Ceplene Assets and Preservation of Any Such Avoided Lien for the Debtors' Estates—11 U.S.C. §§ 544(b) & 551)

121.    The Plaintiff repeats and realleges each and every allegation contained above as if set forth at length herein.

122.    Section 544 of the Bankruptcy Code provides that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of . . . (1) a creditor that extends credit to the

debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such creditor exists; [and] (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such creditor exists[.]

11 U.S.C. § 544.

123.   Therefore, the Trustee holds the rights and powers identified in section 544 of the Bankruptcy Code that place a trustee in the shoes of a hypothetical judicial lien creditor position with respect to Immune's assets as of the Immune Petition Date.

124.   Immune and the Defendant expressly agreed that the Defendant would not acquire an interest in, and no lien in favor of the Defendant would attach to the Ceplene assets prior to March 31, 2019.

125.   Thus, the Trustee has the powers of a hypothetical judicial lien creditor which arose prior to the perfection of any security interest of Discover on the Ceplene Assets and under 9-317(a)(2) of the UCC  and a subsequent in time judicial lien creditor defeats a prior in time unperfected security interest..

**WHEREFORE**, the Plaintiff seeks judgment against the Defendant:

A.   declaring that the Debtors' hypothetical judgment lien trumps the Defendant's alleged lien on the Ceplene assets;

B.   preserving the Debtors' hypothetical judgment lien and the Defendant's alleged lien on the Ceplene assets for the benefit of the Debtors' estates; and

C.   awarding such other and further relief in favor of the Plaintiffs as this Court deems fair and equitable.

## SIXTH COUNT

### (Avoidance of Any Post-Petition Lien of Defendant and Preservation of Any Such Avoided Lien for the Debtors' Estates—11 U.S.C. §§ 549 & 551)

126.    The Plaintiff repeats and realleges each and every allegation contained above as if set forth at length herein.

127.    Section 549 of the Bankruptcy Code provides that "the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case; and that is not authorized under this title or by the court." 11 U.S.C. § 549(a).

128.    Immune and the Defendant expressly agreed that the Defendant would not acquire an interest in, and no lien in favor of the Defendant would attach to the Ceplene assets prior to March 31, 2019.  The Immune Petition Date was before March 31, 2019.

129.    The Court has not authorized the transfer of an interest in the Ceplene assets to the Defendant and the Bankruptcy Code does not authorize the Defendant to take a lien interest in the Ceplene assets.

130.    Any purported lien interest in the Ceplene assets by the Defendant taken post-petition is avoidable by the Debtors under section 549 of the Bankruptcy Code as an unauthorized transaction.

**WHEREFORE**, the Plaintiff seeks judgment against the Defendant:

A.    avoiding any purported lien interest in the Ceplene assets by the Defendant taken post-petition;

B.    preserving any such avoided alleged lien of Defendant on the Ceplene assets for the benefit of the Debtors' estates; and

C.    awarding such other and further relief in favor of the Plaintiff as this

Court deems fair and equitable.

## SEVENTH COUNT

### (Determining That Defendant Does Not Have A Lien On The Ceplene Assets Under 11 U.S.C. § 362(a)(4) and (5))

131.    Plaintiff repeats and realleges each and every preceding allegation as if fully set forth at length herein.

132.    Section 362(a)(4) and (5) of the Bankruptcy Code stay all efforts to create and perfect a lien post-petition.

133.    The condition for creation and perfection of Discover's lien on Ceplene Assets is the failure of the Debtors to sell or license the Ceplene Assets on or before March 31, 2019.

134.    This condition could only arise post-petition.

135.    Section 362(b)(3) of the Bankruptcy Code does not apply here because the creation or perfection of Discover's lien post-petition does not relate back to a pre-petition point in time under applicable non-bankruptcy law.

136.    Thus, Discover's lien in the Ceplene Assets did not arise post-petition because the creation or perfection of such lien was stayed by Section 362(a)(4) and (5) of the Bankruptcy Code.

WHEREFORE, Plaintiff seeks an Order and judgment as follows:

A.    Determining that Discover does not have a lien on the Ceplene Assets; and

B.    Granting such other relief as is just.

## EIGHTH COUNT

### (Subordination of the Defendant's Claim (11 U.S.C. § 510(b)) & Transfer to Estate Any Lien Securing the Subordinated Claim (11 U.S.C. § 510(c)(2)))

137.    The Plaintiff repeats and realleges each and every allegation preceding this paragraph as if fully set forth herein.

138.    Section 510(b) of the Bankruptcy Code provides, in pertinent part:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal to the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).

139.    Rather than simply extend a loan, the Defendant chose to enter into the Securities Purchase Agreement, which would allow it to convert any portion of the face amount of the Debenture into common stock.

140.    The Debenture constitutes a security within the meaning of the Bankruptcy Code because the Securities Purchase Agreement defined the term "Securities" as "includ[ing] the Debenture."

141.    The Debenture is a "security" as defined in section 101(49) of the BankruptcyCode.

142.    The Securities Purchase Agreement also refers to the Defendant as "Investor."

143.    The Defendant's claim is for damages arising from the purchase of a security of the Debtor.

144.    There is a causal relationship between the Defendant's claim and the sale of a security because the Defendant's claims would not exist but for the Securities Purchase Agreement.

145.    Pursuant to section 510(b), the Defendant cannot have the benefits of stock ownership without also taking on the risks.

146.    The Defendant's claim is subject to mandatory subordination under section 510(b) of the Bankruptcy Code.

147.    Section 510(c)(2) of the Bankruptcy Code provides, in pertinent part, that "[n]otwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—…(2) order that any lien securing such a subordinated claim be transferred to the estate."

148.    Consistent with section 510(c)(2), any lien of Discover Growth securing its subordinated claim should be transferred to the estate.

**WHEREFORE**, the Plaintiff seeks judgment against the Defendant:

A.    subordinating the Defendant's claim to the same priority of claims of holders of common stock pursuant to section 510(b) of the Bankruptcy Code;

B.    transferring any lien of Discover Growth securing its subordinated claim to the estate pursuant to section 510(c)(2) of the Bankruptcy Code; and

C.    awarding such other and further relief in favor of the Plaintiff as this Court deems fair and equitable.

### NINTH COUNT

### (Unjust Enrichment)

149.    The Plaintiff repeats and realleges each and every allegation contained above as if set forth at length herein.

150.    The Defendant's claim arises wholly out of the Securities Purchase Agreement, and is therefore subject to mandatory subordination under 11 U.S.C. § 510(b).

151.    If the Defendant's claim is not subordinated in full, the Defendant will have been enriched at the Plaintiffs' expense.

152.    Due to various filings, oral arguments, and this Complaint, the Defendant will have appreciation and knowledge of the benefit it would receive.

-32-

153.    Circumstances are such that, in equity, the Defendant would have to return the money or property to the Debtors.

**WHEREFORE**, the Plaintiff seeks judgment against the Defendant:

A.      declaring that failure to subordinate the Defendant's claim would qualify as unjust enrichment; and

B.      awarding such other and further relief in favor of the Plaintiff as this Court deems fair and equitable.

## TENTH COUNT

## (Claim Objection)

154.    The Plaintiff repeats and realleges each and every allegation contained above as if set forth at length herein.

155.    Pursuant to Bankruptcy Rule 3007(b), the Plaintiff, separately, but in addition to the above-lodged causes of action, hereby lodge an objection to any claims asserted by the Defendant.

**WHEREFORE**, the Plaintiff seeks judgment against the Defendant:

A.      sustaining the Plaintiff's objections to the Defendant's purported claim; and

B.      awarding such other and further relief in favor of the Plaintiff as this Court deems fair and equitable.

## RESERVATION OF RIGHTS

The Plaintiff reserves his right to amend the Complaint for any reason including, but not limited to, to set forth further facts regarding the Defendant's actions or omissions.  The Plaintiff reserves any and all rights to bring any additional claims under applicable law, including, but not limited to, further claims against the Defendant.

Dated: September ____, 2020

**RABINOWITZ, LUBETKIN & TULLY, LLC**
*Counsel for Plaintiff, Jeffrey A. Lester, Chapter 7 Trustee*

By:_____ */s/Jonathan I. Rabinowitz*_____
          JONATHAN I. RABINOWITZ